HOMER BROWN, Respondent, v. HILDA BABCOCK, Appellant.

Fourth Department, March 10, 1943.

*J. Leo Kennedy* for appellant.

*Burroughs A. Strickland* for respondent.

Dowling, J. On the evening of May 9, 1940, the defendant became a guest in the plaintiff's home in the village of Albion, New York. She came in an automobile owned and operated by her. With the plaintiff's knowledge and consent, she drove her automobile into the plaintiff's garage and left it there for the night. The plaintiff also owned an automobile which he parked in front of and facing the garage and about eight feet from the main garage doors. About eight o'clock on the morning of May 10, 1940, the plaintiff opened the main garage doors so that the defendant might back her car out of the garage whenever she chose. The plaintiff then turned on the ignition in his car, took the crank and proceeded to the front of the car to crank it. While he was engaged in cranking the car, with his back towards the open doors, the defendant, knowing that the plaintiff's car was standing in the driveway as above indicated, and without looking to the rear, without giving any signal or warning of her intention so to do, backed her car out of the garage pinning the plaintiff's right leg between the bumpers of the two cars, inflicting upon the plaintiff the injuries complained of in this action. When the plaintiff undertook to crank his car, he was not aware of the fact that the defendant was in her car and was about to back it out of the garage. In explaining the accident the defendant testified in part: " Q. Did you know that Mr. Brown's car was in the driveway? A. I had seen it there. Q. Well, were you going to back right up into his car, whether his car was or wasn't there? A. I apparently had a mental aberration, I forgot the car was there. Q. And by so forgetting about the car, you forgot about him too, didn't you? A. Yes. Q. What do you claim about it, Mrs. Babcock, that you looked back, or didn't look back, or that you don't know whether you looked back or not? A. I was in a hurry, I heard the garage door open, I had the car running, and I started to back out. If I had looked back, I would see the car there. Q. So you deduce from that, that you didn't look back? A. Yes."

The plaintiff's right leg was injured above the knee. The knee joint was not injured and no bones were broken. The plaintiff

was a farmer in a small way. He was also familiar with machinery used in packing cherries. Prior to the accident the plaintiff entered into an oral agreement with one Scharping whereby Scharping, who was engaged in the cherry-packing business, engaged the plaintiff to work for him permanently for $30 per week from July 1, 1940. The plaintiff had worked for Scharping during the cherry-packing seasons in 1937, 1938 and 1939. The season usually lasted about five weeks. Plaintiff's work for Scharping required that he be on his feet continuously during working hours. Before hiring himself to Scharping the plaintiff had given up the operation of his farm. The decision to stop farming, so far as the evidence discloses, had nothing to do with the making of the contract to work for Scharping.

On the trial the plaintiff testified that the injury to his right leg, and the resulting pain, prevented him from entering the employ of Scharping and that his injuries had prevented him from doing any kind of manual work since the happening of the accident. That the plaintiff suffered much pain between the happening of the accident and the time of the trial is borne out by the evidence. But there is no evidence that the injury to the plaintiff's leg is permanent and there is no evidence that the plaintiff will not eventually have a good, serviceable right leg.

The court left it to the jury, in case they found in favor of the plaintiff, to find how much the plaintiff was entitled to receive for the pain and suffering which he had endured as a result of his injuries and how much he would be entitled to receive for any future pain or suffering which the evidence might entitle him to receive. The court also left it to the jury to say how much the plaintiff was entitled to receive for medical expenses and for loss of earnings already sustained or that he might suffer in the future as a result of his injuries. To these instructions no exception was taken. The jury returned a verdict for the plaintiff for $5,000. Motion to set aside the verdict was denied. From the order denying the motion and the judgment entered on the verdict, the defendant has appealed.

The evidence sustains the finding of the jury that the defendant was negligent and that the plaintiff was free from contributory negligence. The jury did not indicate in their verdict how much they had allowed the plaintiff for pain and suffering and how much they had allowed him for medical expenses and for loss of earnings, past and future. The plaintiff claimed that he had already lost ninety-eight weeks at thirty dollars per week because of his inability to perform his agreement with Scharping. This item alone would amount to $2,940. Whether

the jury allowed for any future loss of earnings or for future pain or suffering we have no way of knowing.

A contract for permanent employment, "in the absence of additional express or implied stipulations as to duration, or of a good consideration additional to the rendering of services contracted for is no more than an indefinite general hiring terminable at the will of either party." (*Heaman* v. *Rowell Co., Inc.,* 236 App. Div. 34, 36, and cases cited; *Arentz* v. *Morse D. D. & Repair Co.,* 249 N. Y. 439, 444.) Since such a contract may be completely performed within a year it is not within the Statute of Frauds. (*Rochester Folding Box Co.* v. *Browne,* 55 App. Div. 444, 448, affd. 179 N. Y. 542; Personal Property Law, § 31, subd. 1.) When Scharping learned that the plaintiff was unable to perform the contract, he hired a man in his place on an all-year-round basis.

Both Scharping and the plaintiff had a right to terminate the contract of employment at will, even before it was to become effective. The plaintiff had not entered upon the performance of his duties under the contract and he might never have done so. Under such circumstances the loss of the benefit of the contract as an item of damage would be to some extent remote and speculative and not quite the case of losing a position that one already was enjoying. (*Bilodeau* v. *Maffei,* 309 Mass. 237; *People ex rel. Deverell* v. *M. M. P. Union,* 118 N. Y. 101, 109.) Under the circumstances of this case, the contract wage might, at least, be considered as some evidence of the value of the plaintiff's services. The evidence as to the earning power of the plaintiff prior to the accident was too scant to support a recovery for future pecuniary loss. (*Staal* v. *Grand Street & Newtown R. R. Co.,* 107 N. Y. 625; *Wood* v. *City of Watertown,* 58 Hun, 298, 306, 307.)

We think the verdict is excessive on the proof before us. We think the court should have called the attention of the jury to the nature of the contract between the plaintiff and Scharping, pointing out to them the fact that it was not a contract whereby Scharping had agreed to employ the plaintiff for life, but that it was a contract that either party might terminate at will. Counsel failed to call the court's attention to the nature of the contract of employment. The jury, in assessing the damages, apparently proceeded on the theory that the plaintiff had a contract of employment for life. This erroneous assumption is, undoubtedly, reflected in the size of the verdict. Had the jury understood that the contract of employment was revocable at

will, we can only guess what the amount of the verdict might have been. As it is impossible to say how much the jury allowed the plaintiff for his pain and suffering and how much for loss of earnings, the verdict should not stand. (*Scott* v. *Banks*, 44 App. Div. 28, 29.) The interests of justice require that a new trial be granted. (*City of Buffalo* v. *D., L. & W. R. R. Co.*, 176 N. Y. 308.)

The judgment and the order should be reversed and a new trial should be granted.

All concur. Present — CUNNINGHAM, TAYLOR, DOWLING, HARRIS and McCURN, JJ.

Judgment and order reversed on the law and facts and a new trial granted, with costs to the appellant to abide the event.