■ FORTUNATO PELLICANO et al., Appellants, v THOMAS J. LEE et al., Respondents. — In a negligence action to recover damages for personal injuries and property damage arising out of an automobile accident, plaintiffs appeal from a judgment of the Supreme Court, Dutchess County (Dachenhausen, J.), dated May 4, 1981, which was in favor of the defendants, upon a jury verdict. Judgment reversed, on the facts, and new trial granted, with costs to abide the event. On August 4, 1977, at about 9:30 A.M., the plaintiff driver (hereinafter plaintiff), accompanied by his wife and two children, was transporting a die base to a customer some 40 miles away in his station wagon on the eastbound roadway of Route 84, about a mile west of Exit 19. The day was dry and sunny and he was driving in the right-hand lane of the two-lane eastbound road,

which was separated from the westbound road by a grassy median strip. It was plaintiff's testimony that as he drove along at that point at approximately 50 miles per hour a large tractor trailer began passing him in the left lane. He saw no vehicles in his lane. He heard the sound of squealing brakes and assumed they were caused by the tractor trailer; however, on hearing the sound again about four or five seconds later, he glanced at his rear view mirror and saw the defendants' car braking in the left lane and skidding toward him. Two seconds later their vehicles collided; he passed out when his head struck his headrest, and he returned to consciousness too late to prevent his vehicle from crossing over the left lane onto the median strip. Plaintiff testified that his left rear fender and bumper had been struck by the defendants' right front fender. Plaintiff specified that his speed had remained constant until the impact and that he had not been under any deadline that day in making his delivery. Defendant Thomas Lee (hereinafter defendant) testified that he was driving his father's car to his place of employment in Carmel, where he was manager of a retail electronics store just off Exit 19. He was traveling in the left lane between 50 and 55 miles per hour in order to arrive at the store in time to open it at 10:00 A.M. As he approached his exit, he suddenly could not recall if he had brought the store keys with him, so he "quickly glanced down" at the floor in front of him to see if his second set of keys happened to be there. Before looking down, he had seen no vehicles in his lane and he had closed the distance between himself and the plaintiffs' vehicle in the adjoining lane from about a half-mile to between 15 and 20 feet. When he looked up again, however, the plaintiffs' vehicle — traveling at the same speed, or slightly less — was only "about four feet right in front of me, and I put on my brakes and we hit". More specifically, he testified that, though on looking up he was not sure just where the traffic lanes were, he noticed that the left rear of the plaintiffs' car was in his line of travel, and he estimated the time between looking up and colliding as "a couple of split seconds * * * maybe a second later". The plaintiffs' vehicle, however, was at least partially in its proper lane because after the impact, according to the defendant, "[i]t definitely went over from the right-hand lane, across the left lane and over to the side" of the road. The defendant described the collision damage as slight — a dent in the plaintiffs' fender underneath the back light and a scratch on the fender and displacement of molding on the bumper of his own vehicle. The jury, charged solely with respect to the issue of liability, returned a verdict for the defendants, answering "no" to the interrogatory, "Was the defendant negligent and was that negligence a proximate cause of the accident?" The trial court denied the plaintiffs' motion for a new trial pursuant to CPLR 4404 (subd [a]), and signed the judgment. We conclude, after weighing the evidence, that it "so preponderates in favor of the plaintiff[s] that the verdict for the defendant[s] could not have been reached on any fair interpretation of the evidence" (*Marton v McCasland,* 16 AD2d 781, 782; see, also, *Olsen v Chase Manhattan Bank,* 10 AD2d 539, affd 9 NY2d 829; *Mieuli v New York & Queens County Ry. Co.,* 136 App Div 373; cf. *O'Boyle v Avis Rent-A-Car System,* 78 AD2d 431, 439). Under the "rules of the road" charged by the trial court and adopted by this State from the former Uniform Vehicle Code by chapter 698 of the Laws of 1957, as superseded by chapter 775 of the Laws of 1959 (Vehicle and Traffic Law, tit 7), the plaintiff was under a statutory duty not to switch lanes unless he had ascertained that he could do so safely (Vehicle and Traffic Law, § 1128, subd [a]), and the defendant was under a statutory duty to avoid following another vehicle more closely than was reasonable and prudent, "having due regard for the speed of such vehicle * * * and the traffic upon and the condition of the highway" (Vehicle and Traffic Law, § 1129, subd [a]). Furthermore, section

1122 (subd [a]) of the same statute requires a driver passing a vehicle traveling in the right-hand lane to do so "at a safe distance". While it is certainly true, as the defendants argue on appeal, that the jury could properly have found that the plaintiffs' vehicle had in fact drifted into the defendants' lane, it is equally apparent that this fact alone would not have resulted in the accident. Construing the record in the defendants' favor, it would seem that the defendants' vehicle was in the uninterrupted process of overtaking the plaintiffs' vehicle, without the defendant significantly varying his speed in his lane of traffic. At the instant the defendant had narrowed the distance between his vehicle and the plaintiffs' to at most 20 feet — i.e., one car length, he deliberately took his eyes off the road to conduct a momentary search for his keys. However brief, this period of driving blind brought the defendant to within four feet of the plaintiffs' vehicle, which was apparently now partially in his line of travel, and which was too close for him to slow down or otherwise maneuver in time to prevent a collision at their respective speeds. The only fair conclusion that could have been drawn from these facts, as so construed, would be that the defendant's deliberate failure to maintain a lookout during an obviously dangerous phase of his overtaking maneuver had precluded him from ascertaining the developing situation in time to take sufficient preventive measures (cf. *Andre v Pomeroy,* 35 NY2d 361; *Newmark v Long Is. State Park Comm.,* 24 AD2d 699; *Brown v Babcock,* 265 App Div 596; *Rodriguez v Trebitz,* 304 So 2d 396 [La]; *Garner v O'Connor,* 282 So 2d 807 [La], writ den *sub nom. Pynes v O'Connor,* 284 So 2d 774 [La]; *Wheeler v Simonton,* 215 So 2d 359 [La]). The defendant was, therefore, guilty of at least some culpable conduct in deliberately ignoring another vehicle speeding alongside it in an adjoining lane after having nearly overtaken it. Hence the jury's finding of no culpability on his part cannot stand. Accordingly, the judgment must be reversed and a new trial granted. Weinstein, J. P., O'Connor and Boyers, JJ., concur; Thompson, J., dissents and votes to affirm the judgment.