VALENTINE WOHLFRON, Respondent, *v.* BROOKLYN EDISON COMPANY, INC., Appellant.

Second Department, June 3, 1933.

464

*John D. Monroe*, for the appellant.

*Stephen Callaghan* [*Emanuel Sustick* with him on the brief], for the respondent.

DAVIS, J.   The defendant was engaged in the construction of a large addition to its building and let out different parts of the work to contractors, by one of whom the plaintiff was employed.   The defendant maintained, through its own engineers and inspectors, general supervision and control over the work.

The plaintiff at the time of the accident was proceeding to the place where his work was to be performed and it was necessary to pass along a concrete slab about fifty-eight inches in width.   This slab had been completed by another contractor at least six months before the date of the accident.   About two weeks before the accident a number of holes had been cut near the outside of the concrete slab by still another contractor for purposes connected with the work of construction.   At a certain point about opposite one

of these holes an upright or "strut" had been erected so that in passing to his work the plaintiff had the choice of going between the wall and the "strut," where the width was about thirty-one inches, or going outside near to the edge. If he followed the first course it would be necessary for him in reaching the place of his work to "crawl through or bend over" under a girder forty-five inches high that was between him and the place of his work at the outer edge. If he followed the second course he could walk along the outside space without apparent obstruction until he reached the plank upon which he was to work. He chose the second course. There was nothing inherently dangerous in that choice, for there was sufficient light to disclose the outlines or edge of the slab; and the width of the path he would have to travel was at least fourteen inches, which is ordinarily sufficient for men accustomed to construction work, even at high altitudes. The holes were undisclosed in the dim light furnished by the owner, and there was nothing to warn him of their presence. In passing along in the manner described, the plaintiff stepped into one of these holes, lost his balance and fell twenty-six feet to "an economizer coil" or "boiler tubes," receiving very serious injuries.

A helper accompanied plaintiff on the way to the work, and carried, unattached, a drop light on the end of a wire. This was obviously for use when actually engaged in the work and not for the purpose of lighting the way. The question of contributory negligence has been decided in favor of the plaintiff, and we accept the determination of the trier of the facts. The argument on behalf of the appellant is that the proof did not establish any negligence on the part of the defendant and that the complaint should be dismissed.

Irrespective of any contract that the owner or general contractor may make with the subcontractors to furnish scaffold, ladders and the like, used in connection with the work, the rule in this State and in many other jurisdictions is that the duty rests on the owner or general contractor to use ordinary care to keep the premises in a reasonably safe condition for the servants of the contractor or subcontractor, particularly where the work is of a dangerous character; and to see to it that the workmen have reasonable protection against the consequences of hidden dangers known to the owner or general contractor, or which ought to have been known by him, and not known to those engaged in the particular work. "The duty of the owner to the employee of the contractor is the duty owed by an employer to his own employee in such a case." (*Sullivan* v. *New Bedford Gas & Edison L. Co.*, 190 Mass. 288; quoted in

*Hess* v. *Bernheimer & Schwartz Brewing Co.*, 219 N. Y. 415, 418.) The general rule is applied, with some limitations, in cases where the injured servant is engaged in construction, alteration or repair. (Labatt Master & Servant [2d ed.], § 924 [29].) This is the doctrine known at common law as the duty to furnish a safe place to work, and the duty is non-delegable. (*Coughtry* v. *Globe Woolen Co.*, 56 N. Y. 124; *Hess* v. *Bernheimer & Schwartz Brewing Co.*, *supra; Caspersen* v. *La Sala Bros.*, 253 N. Y. 491; *Murphy* v. *Rochester Telephone Co.*, 208 App. Div. 392; affd., 240 N. Y. 629.) (See, also, Labor Law, § 200.) This obligation is clearly distinguishable from that arising through negligent acts of a subcontractor occurring as a detail of the work. (*Moore* v. *Wills, Inc.*, 250 N. Y. 426.)

The primary duty in a case like this is that of the general contractor or owner who maintains his own force of inspectors to oversee the work and on whom rests the burden of seeing that the place and ways are safe.

There was evidence that the slab, to the knowledge of defendant, was used as a way and means for the employees to get to their work — in fact, it seemed to be the only way open to plaintiff. One of defendant's engineers who had oversight of the work testified that in approaching the work which the plaintiff and his helper were doing, it was perfectly proper for them to walk on this concrete slab. He said that it was the duty of the inspectors to see that the place was kept safe. The unguarded holes therein had existed for such a length of time that the defendant as a question of fact was bound to have knowledge of their presence as well as that the workmen might walk on the slab in performing their duties. This slab, being for a long time completed, must be held to be within the control of the owner. No contractor, unless directed by the owner, had authority to change it. The duty of giving warning of the presence of the holes was also that of the owner.

A majority of the court believe that a sufficient cause of action based on negligence has been shown. The defendant had possession and control of the building, and its engineers and inspectors attended each day during the time of construction to see that " the specifications and the contracts were being lived up to," and to have charge of " safety." In effect their duties were " to see that the work goes along smoothly to final completion " and " looking after the interests " of the defendant. (*De Lee* v. *Pardy Construction Co.*, 249 N. Y. 103.)

Admittedly, it was the duty of the defendant's superintendents and inspectors to point out any condition they noticed that was " glaringly unsafe about the work." We think the defendant

failed in its duty. (*Hooey* v. *Airport Construction Co.*, 253 N. Y. 486.)

The judgment should be affirmed, with costs.

LAZANSKY, P. J., and CARSWELL, J., concur; HAGARTY, J., with whom SCUDDER, J., concurs, dissents and writes for reversal and a dismissal of the complaint.

HAGARTY, J. (dissenting). This is a common-law action. Defendant entered into separate contracts with various contracting companies for the installation of new steam and electric generating units in its Brooklyn plant. Plaintiff was in the employ of M. H. Treadwell Co., Inc., an independent contractor, engaged in the work of erecting the cinder catchers above the boilers. Along the westerly wall of the defendant's plant, above the boilers but below the cinder catchers, there extended a concrete slab, fifty-eight inches wide, divided longitudinally by a girder forty-five inches above the surface. This slab was a permanent part of the defendant's structure. Holes had been cut in the outer edge of the slab by another contractor for the purpose of exposing the inner surface so that the steel supports for the gratings could be riveted thereto. While walking along the slab between the girder and the outer edge, with sufficient light to see the outer edge of the slab, plaintiff stepped into one of the holes, fell and was injured. I am of opinion that the accident to plaintiff reasonably could not have been anticipated. Defendant violated no duty that it owed to the plaintiff. There is no proof in this record that the slab was intended to be used or ever before was used as a passageway for workmen. Here, as in *Murphy* v. *Altman* (28 App. Div. 472), it was apparent to the plaintiff that the building was incomplete, and he took the risk of the work because of its incomplete condition. (See, also, *Burke* v. *Ireland*, 26 App. Div. 487; *Callan* v. *Pugh*, 54 id. 545; *Pelzel* v. *Schepp*, 83 id. 444; *O'Donnell* v. *Welz & Zerweck*, 97 id. 286; *Joyce* v. *Convent Avenue Construction Co.*, 155 id. 586, and *Doremus* v. *Auerbach*, 176 id. 512; affd., 223 N. Y. 709.) My opinion is that the judgment goes beyond "the bounds of what is practicable and reasonable." (*Caspersen* v. *La Sala Bros.*, 253 N. Y. 491.)

The judgment should be reversed, with costs, and the complaint dismissed, with costs.

SCUDDER, J., concurs.

Judgment affirmed, with costs.