CARL DINKUHN, Respondent, *v.* WESTERN NEW YORK WATER COMPANY, Appellant.

Fourth Department, June 30, 1937.

*Fred Van Aernam* [*Clayton M. Smith* of counsel], for the appellant.

*Sanders, Hamilton, Dudley & Connelly* [*J. Eugene McMahon* of counsel; *Chester McNeil* with him on the brief], for the respondent.

TAYLOR, J. On April 10, 1935, plaintiff sustained injuries in a fall from a concrete platform erected between the first or ground level floor and the basement floor in defendant's pump house. On the morning of the accident plaintiff, an employee of the Buffalo Tank Corporation, went with a helper to defendant's premises for the purpose of installing two flights of iron stairs that had been fabricated by his employer and delivered to defendant's pump house on the preceding afternoon. Plaintiff had not been in the pump house before the morning of the accident. About a week before the accident, plaintiff's employer received an order from defendant for the stairs and sent its draftsman to the pump house to make measurements and obtain other data necessary to construct and install the stairs.

The defendant was engaged in selling water; its business required additional pumping capacity and, at the time of the accident, it was making alterations in its plant. Pumps that had been located on the first floor were lowered to the basement. Access to the basement from the first floor was obtained through openings in the first floor and down steel ladders bolted to the wall. By using one of these ladders, a person ascending or descending would pass within six inches of a concrete platform four feet three inches below the first floor and nine feet three inches above the basement floor. The pumps required the constant attention of engineers, which fact, after the removal of these pumps to the basement, made it desirable to provide more convenient means of access. The two flights of stairs ordered from plaintiff's employer were to serve this purpose, one flight from the basement floor to the concrete platform and the other from the platform to the first or ground level floor. These stairs were cumbersome and heavy; to put them in place it was necessary to lower them through openings in the first floor by means of a block chain hoist which

the defendant was to furnish. After defendant's employees had placed the stairs in position, the plaintiff and his helper were to fit and fasten them in place.

The plaintiff (he was the only witness to the accident) testified that, with his assistance, one flight had been lowered to the concrete platform through an opening directly above it and placed in position but not bolted; that he then descended the ladder to the platform to find out how best he could place in position the flight of stairs which would connect the basement with the platform after said flight had been lowered to the basement through another opening ten or fifteen feet away from the platform; that as he stepped from the ladder to the platform, he turned and walked three or four feet, in a crouching position, toward the opening at the edge of the platform, where the top of the stairs was to be attached, when he slipped and fell to the basement floor. In answer to the question, " Do you remember going through this opening? " plaintiff replied, " I wouldn't go through only look down and when I looked down my foot was slipping and I tried to grab me on the wall and everything was wet, the pump wasn't working and everything was damp and floor slippery." Plaintiff further testified that the platform was dimly lighted by a droplight on the first floor about twenty-five feet above the platform, which gave sufficient light to enable plaintiff to get off the ladder and see the platform but not enough light to disclose the condition of the platform floor. Plaintiff's helper testified that after the accident his employer furnished another man in plaintiff's place; that they completed the installation of the stairs; that he observed mud and water on the platform and that it was slippery.

There was testimony by other witnesses that an employee of the defendant had been in the flooded basement and on the platform a number of times before the accident and that other employees of defendant had been working on the platform just before plaintiff descended to it. It does not appear that plaintiff was directed to go to the platform or that defendant's employees knew that he intended to do so; his helper last saw him when the first flight of stairs was being lowered to the platform.

In my opinion, the plaintiff's proofs above set forth do not make out a cause of action against defendant based on negligence. While the owner of a building being altered or constructed, who directs or assumes control of the work, is under a duty to the employees of a subcontractor to use reasonable care in maintaining the approaches to the place where the work is to be performed in a reasonably safe condition, he " is not required to go beyond

the bounds of what is practicable and reasonable." (*Caspersen* v. *La Sala Bros.*, 253 N. Y. 491; *Wohlfron* v. *Brooklyn Edison Co., Inc.*, 238 App. Div. 463; affd., without opinion, 263 N. Y. 547.)

The specific breach of duty charged against this defendant is that mud and water upon the surface of the concrete and inadequate lighting exposed plaintiff to an unreasonable risk of harm. The presence of mud and water may or may not create a dangerous condition — it depends upon the circumstances. (*Kraus* v. *Wolf*, 253 N. Y. 300; *Miller* v. *Gimbel Bros., Inc.*, 262 id. 107.) The lack of proper lighting may be evidence of negligence. (*Vandenberg* v. *Reiss Const. Co.*, 263 N. Y. 500. Cf. *Rix* v. *Siegel*, 235 App. Div. 499; *Boyle* v. *Degnon-McLean Const. Co.*, 47 id. 311.)

Plaintiff says that the platform was wet and slippery; he must have expected water in this pump house because he wore his rubber boots that morning; he offered no proof of the length of time the condition had existed or of notice concerning it to the defendant. Plaintiff suggests that defendant's workmen tracked dirt and water from the basement when the first section of stairs was, with his assistance, placed in position; if this is so, it would " go beyond the bounds of what is practicable and reasonable " to require that defendant clean the platform before plaintiff reached it. Even assuming that a dangerous condition existed, the duty of a master to provide a reasonably safe place to work " does not apply where the prosecution of the work itself makes the place and creates the danger." (*Mullin* v. *Genesee County Elec. L., P. & Gas Co.*, 202 N. Y. 275.)

Plaintiff relies upon *Wohlfron* v. *Brooklyn Edison Co.* (238 App. Div. 463; 263 N. Y. 547) but the facts in that case are so unlike the facts in this, that it cannot be considered controlling here. In that case there were proofs that there were holes in the passage used by the injured employee to reach his place for work that were unknown to him but known to the owner and that the passage was poorly lighted. In our case, plaintiff was present when the danger was created so that if there were any negligence it was that of plaintiff in going to the platform in face of the obvious fact that it was wet and poorly lighted. (*Doremus* v. *Auerbach*, 176 App. Div. 512; affd., 223 N. Y. 709.)

The judgment and order should be reversed on the law and the facts and the complaint dismissed, with costs.

All concur. Present — SEARS, P. J., EDGCOMB, CROSBY, LEWIS and TAYLOR, JJ.

Judgment and order reversed on the law, with costs, and complaint dismissed, with costs.