Dore, J.
Defendant Saks Fifth Avenue appeals: (1) from a judgment against it in plaintiff’s favor entered on a jury’s verdict of $26,500 after trial; and also from (2) an order dismissing, before the case went to the jury, appellant’s third-party complaint against defendant Allied Maintenance Co., an independent contractor impleaded by appellant.
On April 25, 1946, when the accident occurred, plaintiff, a plumber, was employed by the impleaded defendant, Allied Maintenance Co., which by contract with Saks & Company, the owner of the store premises in question, had complete charge of the maintenance and operation of the store’s mechanical and other equipment. At the time in question, Allied had about forty-three employees engaged in the work under its *608 contract. One Monahan was. employed by Allied as chief engineer to supervise all the mechanical equipment of the store, its operation and maintenance and at the time he had under him over twenty employees, plumbers, engineers, electricians and other mechanics including plaintiff.
In April, 1946, the owner’s assistant manager told Monahan to install a wash basin in the southeast corner of the sixth floor of the store for a new jewelry repair department. The assistant manager said he knew a drain would have to be installed for the basin but did not know that it would have to go down through the sixth floor and the fifth floor ceiling and did not know how the drain would be connected with the store’s drainage system.
Monahan told plaintiff and a coworker, both plumbers employed by Allied, to install the wash basin on the sixth floor and approximately where he would like to have it in the south-east corner and to run a waste line from the basin on the sixth floor into the slop basin on the fifth floor. No plans or specifications were drawn or submitted to the owner. Plaintiff and another plumber, a coemployee of Allied, installed the wash basin on the sixth floor and decided for themselves the exact spot through which they would run the drain pipe from the sixth through the ceiling of the fifth floor. As they said it was impossible to use a ladder to reach the pipe when it came down through the ceiling, plaintiff and his coworker got on top of certain air ducts made of galvanized tin put together in sections with angle irons around them at intervals necessary to support the ducts which would otherwise buckle. The ducts with the supporting angle irons had been installed in the store under a contract made many years before and the conditions existing on the date of the accident, April 25, 1946, had existed for a considerable period of time and before the time Allied contracted to do the maintenance work of the building.
When the accident happened, plaintiff said he was lying flat on top of one of the air ducts near the ceiling joining one piece of pipe to another with a Stillson wrench; the wrench slipped and he hit his hand against two sharp corners of the angle iron on the air duct on which he lay thus receiving the injuries for which he has recovered the judgment against the owner of the premises.
Plaintiff said that he climbed on top of a locker and then pulled himself up to the top of the air duct; his coworker used a ladder; but they both testified that it was impossible by means of a ladder to get at the pipe in the place in question.
*609 The only theory on which plaintiff sought recovery against the owner was that the owner failed to furnish him with a safe place to work in that the angle irons on the air ducts had sharp corners against which plaintiff struck his wrist when the wrench slipped. No proof whatever was offered with respect to the claim made in the pleading that the owner furnished plaintiff with a defective wrench.
Under the unique state of facts here disclosed, the construction of the air ducts and the angle irons far above the floor and close to the ceiling was reasonably safe and danger was not reasonably to be anticipated therefrom. This case is to be distinguished from cases in which the owner maintained general supervision and control of the work or acted as general contractor (Semanchuck v. Fifth Avenue & 37th St. Corp., 290 N. Y. 412, 418; Wohlfron v. Brooklyn Edison Co., 238 App. Div 463, 464, affd. 263 N. Y. 547, 548). In the case before us, defendant Allied, an independent contractor, had control, direction and supervision of the work of installation being performed by its own employees. The owner gave no directions, exercised no control or supervision of the work plaintiff was doing or how the work was to be performed. The court charged without exception that the owner was “ not employing or directing Mr. Cartee [plaintiff] to do any work or this particular work.” Plaintiff and his coworker selected the precise spot in which to bring the drain pipe through the ceiling and down between the two air ducts. The air ducts to which the angle irons were attached were near the ceiling and so high above the fifth floor that they could not be reached or touched by a person standing on the floor without a ladder long enough or other similar means. Ordinarily it would be wholly unlikely and practically impossible for anyone to come in contact with the angle irons. The combination of circumstances under which this accident occurred was unique, exceptional and unusual. In the light of the distance of the angle irons from the floor and the fact that the owner did not supervise or direct how the work of installing the drain should be done, the owner was not negligent in not anticipating or foreseeing danger in the prosecution of the work from the angle irons near the ceiling.
The fundamental basis of liability for actionable negligence is the reasonable foreseeability of the risk, the ability reasonably to anticipate the risk; every possible accident due to unusual and reasonably unforeseeable combinations of circumstances is not included; reasonable foresight is required but *610 not prophetic vision (Collins v. Noss, 258 App. Div. 101, affd. 283 N. Y. 595; Lyman v. Putnam Goal & Ice Co., 182 App. Div. 705, affd. 230 N. Y. 548; Buell v. Utica Gas & Elec. Co., 259 N. Y. 443; 1 Shearman & Redfield on Negligence [Rev. ed.], § 24). Actionable negligence was not established against defendant, the owner, and the judgment against it should be reversed. In the light of our disposition of the main appeal, the owner’s second appeal from dismissal of its cross complaint by the court should be dismissed as academic.
The case, Wohlfron v. Brooklyn Edison Co. (238 App. Div. 463, 466, affd. 263 N. Y. 547, supra), relied on by plaintiff is distinguishable on its facts and not here controlling. In that case the owner was the general contractor engaged in the construction of a large addition to its building and let out different parts of the work to subcontractors by one of whom the injured plaintiff was employed. A slab with unguarded holes had been used to the knowledge of the owner as a means of access for the employees to get to their work; defendant’s engineers and inspectors attended each day during the course of the construction to see that the specifications were lived up to. In the case before us there was no such obvious danger to workmen using a means of access to the work with unguarded holes and in dim light.
In Haefeli v. Woodrich Engineering Co. (255 N. Y. 442) also relied on by plaintiff, a cesspool collapsed upon a man engaged in cleaning it; it was necessary to descend into it to remove the sludge and the man on whom it collapsed had used a ladder for the purpose in a position almost vertical; there was testimony that the stone taken from the cesspool after the cave in showed no signs that cement had been applied; and the defendant held liable had supervised through a superintendent the construction of the cesspool. Such basically defective condition of the structure was inherently dangerous and the defendant was properly held liable.
That the owner owed to the employee of the independent contractor the same duty it owed to its own employee is not dispositive of the basic issue on this appeal. If instead of acting through Allied, the independent contractor, the owner had acted directly through its own employees, the issue of negligence would not arise at all; the employee of the owner would then be protected by workmen’s compensation wholly irrespective of negligence or contributory negligence. The issue arises in this case only because the claim here is against the owner as *611 a' third party. The measure of such duty should not go beyond the bounds of what is practical and reasonably foreseeable; liability for actionable negligence must lie within the range of natural and probable consequences. On the state of facts here disclosed, to extend liability to the owner who did not do or supervise the work or direct how it was to be done, is to make the owner a guarantor or insurer of risk against accidents however unlikely or reasonably unforeseeable just as if the owner were a compensation carrier but without the limits the law allows such carriers.
In Van Leet v. Kilmer (252 N. Y. 454, 457, revg. 225 App. Div. 184 [3d Dept.]), an employee of a corporation for which defendant supplied electric power was thrown from a ladder and killed when he came in contact with defendant’s electric wires strung twenty feet above the ground. The Court of Appeals unanimously reversed a judgment in favor of the plaintiff against defendant on the ground that in the circumstances disclosed the defendant, as a matter of law, was not shown to have omitted any safeguard against danger which could reasonably be foreseen. The court said: “ Sympathetic impulse must yield to law. Affirmance of this judgment would, in our opinion, result in such an extension of liability as would exceed all reasonable bounds. Where peril lurks, its creator is bound to provide safeguards. Unusual precautions must be taken against extraordinary dangers. Where mere potentiality of injury exists, only such foresight as appears to be commensurate with its reasonably probable occurrence need be employed.” The court added that no more than reasonable care even in such case is required and that every conceivable injury “ due to unusual combinations of circumstances ” need not be foreseen. A similar conclusion was reached in Lyman v. Putnam Coal & Ice Co. (supra) and the Court of Appeals affirmed (230 N. Y. 548). But with regard to exposed live wires with high voltage of electricity, see Bennett v. New York & Queens Elec. Light & Power Co. (294 N. Y. 334, 337). Where live wires are maintained, however, there is glaring danger and the standard of care must be commensurate with the risk.
The judgment, so far as appealed from by the defendant-appellant, should be reversed, with costs of its appeal to the defendant-appellant against the plaintiff-respondent and the complaint should be dismissed, with costs. The appeal by the third-party plaintiff-appellant from the dismissal of its cross complaint should be dismissed, as academic, with costs of this *612 appeal to the third-party defendants-respondents against the third-party plaintiff-appellant.
Glennon, J. P., Cohn and Callahan, JJ., concur; Shientag, J., dissents and votes to affirm.
Judgment, so far as appealed from by the defendant-appellant, reversed, with costs of its appeal to the defendant-appellant against the plaintiff-respondent and the complaint dismissed, with costs. Appeal by the third-party plaintiff-appellant from the dismissal of its cross complaint dismissed as academic, with costs of this appeal to the third-party defendants-respondents against the third-party plaintiff-appellant. Settle order on notice.