Howard T. Hogan, J.
The plaintiff herein, Firemen’s Fund Indemnity Company, sues as subrogee of the injured workman, one Joseph Lombardo, to whom it paid workmen’s compensation benefits by reason of injuries sustained by Lombardo as an employee working for Louis Silverman. Lombardo was a sheet-metal worker at the time of his injury and had been *890 engaged in this work for several years. At the time, namely November 4, 1949, he was employed by Fenwood Section C Corp., which corporation was the owner and builder of the apartment house on which he was injured. The general contractor for the construction of the apartment house was Jonathan Woodner, Inc., another named defendant. Woodner, Inc., subcontracted the iron and metal work to Midland Iron Works, Inc., a third defendant. Woodner likewise subcontracted the carpentry work to copartners, doing business as Factor & Weisburd, a fourth named defendant. Midland Iron Works, Inc., subcontracted the iron work to Samuel Raskin, doing business as Brownsville Iron Works, a fifth named defendant.
Jonathan Woodner, Inc., has cross-complained against three of the other defendants, to wit, Midland Iron Works, Inc., Factor & Weisburd and Raskin, doing business as Brownsville Iron Works, all three of which were subcontractors. It is Woodner’s contention that if the plaintiff subrogee recovers judgment against Woodner, the latter will be entitled to a judgment over against these three third-party defendants for the reason that if negligence is established it must, of necessity, be the result of the negligence of these three third-party defendants.
The third-party plaintiffs, Jonathan Woodner, Inc., and Fenwood Section C Corp., have cross-complained against Midland Iron Works, Inc., the general contractor and Factor & Weisburd, the copartners, claiming that these two subcontractors had entered into a written agreement whereby each became an independent subcontractor and each agreed to indemnify and hold harmless the general contractor Woodner and the owner and builder of the apartment house, Fenwood, from any liability imposed by law.
The third-party plaintiff, Midland Iron Works, Inc., cross-complains against Raskin, doing business as Brownsville Iron Works, to whom it, as a subcontractor, had subcontracted the iron work, contending that if the subrogee plaintiff recovers against Midland, such a recovery would necessarily be founded upon the negligence of Brownsville and that in such event, Midland would be entitled to recover over from Brownsville.
The facts are briefly these: On November 4, 1949 Lombardo, sometime between 8:00 and 8:15 in the forenoon, walked through the particular entrance of the apartment house where the accident later occurred. Over the entrance of the apartment building, there had been constructed a hood or flat deck, extending approximately four feet from the face of the building and approximately eight feet long. The hood had been nailed into *891 the brick. Its exterior portion was supported by 3 x 4 temporary wooden posts placed in each corner. These posts were in position when Lombardo walked into the entrance that morning to take measurements for the flashing he was to install between the wood and the building. He climbed the stairs, stepped out onto the hood, took his measurements and then returned to the shop to cut the copper and get his materials for affixing the flashing. Instructions had been given to him by the foreman on the job, not as to the method of doing the work, but rather to proceed with the flashing in this particular area. The foreman was the employee of Fenwood Section C Corp., the owner and builder of the apartment house. Lombardo, having cut the copper in accordance with the measurements he had taken and after securing tools and necessary equipment, walked from the shop and returned to the entrance at about 9:00 a.m. At this time he testifies that he did not notice whether the braces on the exterior corners of the hood were still in place. He knew that they were temporary supports and he admits that he knew of his own knowledge that, if the hood were not supported by braces, for him to walk on it to attempt to install the flashing would be dangerous. He says that he assumed that the braces were in position but that he did not look to see whether or not they were when he entered the building the second time. He proceeded out onto the roof and was in the preparation of affixing the flashing when the hood collapsed and he fell to the ground, sustaining the injuries. The foreman who was a witness and was across the street on another building at the time, said he heard something, looked across just as the hood was about to fall and that he saw the supports for the exterior posts lying on the ground; that these were not in place when Lombardo climbed out onto the hood the second time.
It is axiomatic that under our law Lombardo was owed the duty of being provided with a safe place in which to work (Wohlfron v. Brooklyn Edison Co., 238 App. Div. 463, affd. 263 N. Y. 547). However, that duty did not encompass require-' ments beyond the bounds of what was practicable and reasonable. The voluntary use of this method of workmanship by using the hood in place of scaffolding or ladders or other safety device did not constitute permission being given to the employee on the part of the owner, the general contractor or subcontractors. The workman, by his own act, projected himself into a situation by first of all not ascertaining in advance whether the supports to the hood were in place; and secondly, by making use of the hood as a scaffolding — which a reasonably prudent *892 man should have foreseen was a place of peril in the course of normal work. This hood was never designed or intended to serve as a scaffold and by such unusual usage the employee assumes the risk.
Under the circumstances, this court is unable to ascribe any actionable negligence on the part of these defendants. Accordingly, the complaint and cross complaints are dismissed.
The foregoing are the facts found by the court and constitute its decision as required by section 440 of the Civil Practice Act.