JOHN MULLIN, Respondent, *v.* GENESEE COUNTY ELECTRIC LIGHT, POWER AND GAS COMPANY, Appellant.

Master and servant — when master not liable for injury of "lineman" injured by fall of telephone pole which had been improperly set.

1. The general rule that it is the duty of the master to exercise reasonable care to provide a fairly safe working place for his servants does not apply where the prosecution of the work itself makes the place and creates the danger. (*Citrone* v. *O'Rourke Engineering Constr. Co.*, 188 N. Y. 339, followed.)

2. Plaintiff, a "lineman," was injured by the falling of a pole upon which he was engaged in stringing wires for defendant. In an action at common law to recover for his injuries there was evidence tending to show that the pole had not been properly set by men termed "polesetters" and that this fact had been brought to the attention of the foreman before the accident. The work of setting the poles and the work of stringing the wires were details of the common employment, performed at different times and by different men, but all in the process of creating the place in which the plaintiff met with his injury. Hence, the plaintiff cannot recover.

*Mullin* v. *Genesee Co. Light, Power & Gas Co.*, 136 App. Div. 913, reversed.

(Submitted May 10, 1911; decided May 30, 1911.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered February 25, 1910, affirming a judgment in favor of plaintiff entered upon a verdict.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Safford E. North* for appellant. The court erred in denying the motion for a nonsuit and for a direction of a verdict, and in submitting to the jury the question of a safe place in which to work. (*Citrone* v. *O'Rourke Eng. Constr. Co.*, 188 N. Y. 339; *O'Connell* v. *Clark*, 22 App. Div. 466; *Strowbridge* v. *Brooklyn City Railway*

*Co.*, 9 App. Div. 584; *Bertolami* v. *United Eng. & Const. Co.*, 120 App. Div. 192; 125 App. Div. 584; *Logerto* v. *Central Railway Co.*, 123 App. Div. 840; *Kelly* v. *Battle Island Paper Co.*, 122 App. Div. 185; *Murphy* v. *B. & A. R. R. Co.*, 88 N. Y. 146; *La Duke* v. *H. R. Tel. Co.*, 124 App. Div. 106.)

*John J. McInerney* for respondent.    The ruling of the court denying a motion for a nonsuit and for a direction of verdict and in submitting to the jury the question of a safe place in which to work was entirely proper. (*Kranz* v. *L. I. R. R. Co.*, 123 N. Y. 1; *Finn* v. *Cassidy*, 165 N. Y. 584; *Felice* v. *N. Y. C. & H. R. R. R. Co.*, 14 App. Div. 345; *Stuber* v. *McIntee*, 148 N. Y. 200; *Ricker* v. *N. Y., O. & W. R. R. Co.*, 64 App. Div. 357; *Schemerhorn* v. *Glen Falls Portland Cement Co.*, 94 App. Div. 600; *Leland* v. *Hearn*, 49 N. Y. 111; *Hatton* v. *Hilton Bridge Construction Co.*, 42 App. Div. 298; *Spalding* v. *O'Brien*, 26 Misc. Rep. 184.)    The negligence was not that of fellow-workmen and the fellow-servant doctrine has no application to the case at bar.    (*Kranz* v. *L. I. R. R. Co.*, 123 N. Y. 1; *Simone* v. *Kirk*, 173 N. Y. 7; *Finn* v. *Cassidy*, 105 N. Y. 584; *Hempstock* v. *L. I. S. Co.*, 99 App. Div. 333; *Dugan* v. *Phelps*, 82 App. Div. 509; *McTaggart* v. *Eastman's Co.*, 28 App. Div. 127.)

Werner, J.    The plaintiff, a lineman employed by the defendant on the 18th day of July, 1907, was injured by the falling of a pole which was part of a line of wires then in course of construction in Genesee county for the transmission of electric power.    The action was commenced under the Employers' Liability Act and the notice required by that statute seems to have been served. That theory was abandoned at the trial, however, and the case went to the jury as one at common law, involving the question whether the defendant as employer had discharged its duty to the plaintiff to furnish him a rea-

sonably safe place in which to work. Had there been an adherence at the trial to the theory of the complaint that this is an action properly brought under the Employers' Liability Act, it is quite probable that the plaintiff would have succeeded in getting a verdict which he could have sustained on appeal; but his determination to present his cause of action as one at common law has brought into the case a common-law rule which is fatal to his judgment.

The record discloses that, at the time of the accident to the plaintiff, the defendant was engaged in constructing through Genesee county a line of poles and wires for the conveyance of electric power. The plaintiff, an experienced lineman, had worked for the defendant about nine days previous to the accident. The force of men engaged in the construction of this line were divided into "gangs," each of which performed different parts of the work, but all were subject to the control of a superintendent and a foreman, both of whom gave orders and hired and discharged men. Broadly stated, the force was divided into the "ground men," who dug the holes; the "framers," who trimmed and prepared the poles; the "polesetters," who placed the poles; and the "linemen," who strung the wires. That this division of labor was not strictly observed is evident from the fact that the plaintiff, although a lineman, had assisted in trimming poles. He had nothing to do, however, with the digging of the holes or the setting of the poles. On the day of the accident he was engaged with others in stringing wires. The ends of the wires, three in number, were fastened into holes drilled into a triangular piece of iron, called a running board, at the opposite end of which there was another hole into which was fastened a heavy rope. This rope was thrown over the crossarm on the first pole, a team was attached to the further end of the rope, and the line was thus drawn forward until the running board reached the crossarm, where a lineman was stationed,

who gave the signal for the team to stop until he could lift the running board so that it would clear the cross-arm, and when this had been done the teamster was signaled to go forward. This process was repeated from pole to pole. When the line reached a pole at which the plaintiff had been stationed, he ascended. The running board had nearly reached the pole when he gave the teamster the usual signal to stop. Having lifted the running board so that it would clear the crossarm, he gave the signal to go on. At that juncture the strain of the line caused the pole to fall and the plaintiff was thrown to the ground with such violence as to sustain personal injuries. It appears that this pole was one of a number which had been set in low, soft marshy earth. There was evidence which would have justified the jury in finding that this particular pole had not been properly set, and that this circumstance had been brought to the attention of defendant's foreman before the happening of the accident to the plaintiff. There was other testimony from which the jury were also authorized to find that the plaintiff had nothing to do with the setting of this pole; that he had no actual knowledge of its unsafe condition, and was not chargeable with notice thereof.

At the close of the plaintiff's case the counsel for the defendant moved for a nonsuit upon the usual grounds that the plaintiff had failed to establish negligence on the part of the defendant, and on the further ground " that the negligence, if any, was that of the fellow-servant of the plaintiff, for which the defendant is not responsible." To this the trial court replied: " I think there is a question of fact here for the jury as to whether or not the defendant exercised reasonable care in providing a reasonably safe place for Mullin to do his work," and thereupon the motion for a nonsuit was denied. To this ruling the defendant's counsel excepted, and in doing so he further moved for a nonsuit upon the specific ground

that the rule requiring a master to furnish his servants with a reasonably safe place in which to work has no application to this case. That motion was also denied and the defendant's counsel again excepted. The same question was raised by exception to the refusal of the trial court to nonsuit the plaintiff at the close of the evidence, and by exception to the charge to the jury.

From what we have already said it is evident that the case turns upon the question whether it was the defendant's duty to furnish the plaintiff with a safe place in which to work. To state it differently, the question is whether the general rule that it is the duty of the master to exercise reasonable care to provide a fairly safe working place for his servants, applies to a case like the one at bar. That rule does not apply "where the prosecution of the work itself makes the place and creates the danger." (*O'Connell* v. *Clark*, 22 App. Div. 466; *Stourbridge* v. *Brooklyn City R. R. Co.*, 9 App. Div. 129; *Citrone* v. *O'Rourke Engineering Construction Co.*, 188 N. Y. 339; *Capasso* v. *Woolfolk*, 163 N. Y. 472, 476; *Perry* v. *Rogers*, 157 N. Y. 251.) The reason for this exception to the general rule is that it would be manifestly absurd to hold a master to the duty of providing a safe place when the very work in which the servant is engaged makes it unsafe. If a man is engaged in tearing down a house he is constantly exposed to dangers of his own creation; and in such a case all those who are engaged in the same common purpose are fellow-servants for whose negligence in executing the details of the work the master is not liable, even though "the work is done in successive stages, different parts thereof being devolved upon different persons, and the labor performed by one set of employees being prior in time to that performed by another set." (*Citrone* v. *O'Rourke Engineering Constr. Co.*, 343, *supra*, and cases there cited.)

In the case at bar the evidence tended to establish that the pole which fell with the plaintiff had not been prop-

erly set. If the work of setting poles was a part of the construction of this electric line, it follows that it was part of the very work which created the place in which the plaintiff was called upon to work, and that the negligence of the polesetters was the negligence of the plaintiff's fellow-servants in a detail of the work in pursuit of the common purpose in which all were engaged. We do not see how the case can be open to any other view. If this had been a completed line upon which the plaintiff had been employed to string additional wires he would find support in the cases of *McGuire* v. *Bell Telephone Co.* (167 N. Y. 208, 210); *Kranz* v. *L. I. Ry. Co.* (123 N. Y. 1); *Finn* v. *Cassidy* (165 N. Y. 584), and other similar cases upon which he relies. But this was not a completed line. The work of setting the poles and the work of stringing the wires were details of the common employment, performed at different times and by different men, but all in the process of creating the very place in which the plaintiff met with his injury. We cannot distinguish the case at bar from the *Citrone* case, and that is enough to render further discussion unprofitable.

The judgment must be reversed and a new trial granted, costs to abide the event.

CULLEN, Ch. J., HAIGHT, WILLARD BARTLETT, HISCOCK, CHASE and COLLIN, JJ., concur.

Judgment reversed, etc.