GEORGE S. STORM, as Administrator of the Estate of THOMAS S. STORM, Deceased, Respondent, *v.* THE NEW YORK TELEPHONE COMPANY, Appellant.

(Argued January 14, 1936; decided March 3, 1936.)

*Irving W. Young, Jr., N. H. Egleston, E. F. Snydstrup, H. N. Wells* and *Charles T. Russell* for appellant. Appellant was guilty of no negligent act or omission which was either the sole or a concurrent proximate cause of the death of respondent's intestate. Appellant was under no duty to provide respondent's intestate with a safe place to work. (*Kowalsky* v. *Conreco Co.,* 264 N. Y. 125; *Citrone* v. *O'Rourke Engineering Constr. Co.,* 188 N. Y. 339; *Mullin* v. *Genesee County El. L., P. & G. Co.,* 202 N. Y. 275.) Appellant performed its full duty to respondent's intestate by expressly warning all of his immediate supervisors of the unsound condition of the poles. (*Palsgraff* v. *Long Island R. R. Co.,* 248 N. Y. 339; *McInerney* v. *Delaware & Hudson Canal Co.,* 151 N. Y. 411; *Rosebrock* v. *General Electric Co.,* 236 N. Y. 227; *Sider* v. *General Electric Co.,* 203 App. Div. 443; 238 N. Y. 64; *Genesee County Patrons Fire Relief Assn.* v. *Sonneborn Sons, Inc.,* 263 N. Y. 463; *Moch Co.* v. *Rensselaer Water Co.,* 247 N. Y. 160.)

*Thomas J. O' Neill* and *L. Daniel Danziger* for respondent. The defendant was guilty of concurrent negligence proximately causing the death of plaintiff's intestate. (*Maher* v. *Buffalo, R. & P. Ry. Co.*, 217 App. Div. 532; *DeHaen* v. *Rockwood Sprinkler Co.*, 258 N. Y. 350; *Aaron* v. *Missouri & K. Tel. Co.*, 131 Pac. Rep. 582; *Murphy* v. *Rochester Tel. Co.*, 208 App. Div. 392; 240 N. Y. 629; *Rose* v. *Missouri Dist. Tel. Co.*, 328 Mo. 1009; *Ring* v. *City of Cohoes*, 77 N. Y. 83; *Ivory* v. *Town of Deerpark*, 116 N. Y. 476; *O' Neill* v. *City of Port Jervis*, 253 N. Y. 423; *Carlock* v. *Westchester Lighting Co.*, 268 N. Y. 345; *Sweet* v. *Perkins*, 196 N. Y. 482; *Speich* v. *International Ry. Co.*, 219 App. Div. 620; *Anastasio* v. *Hedges*, 207 App. Div. 406.) Notice to the lighting company, its superintendent and foreman was not notice to plaintiff's intestate of the condition of the pole. *O'Connor* v. *Ebling Brewing Co.*, 102 Misc. Rep. 234; *Anastasio* v. *Hedges*, 207 App. Div. 406; *Casualty Co.* v. *Swett El. L. & P. Co.*, 230 N. Y. 199; *Lechman* v. *Hooper*, 52 N. J. L. 253; *Ramsey* v. *Raritan Copper Co.*, 78 N. J. L. 474; *Riley* v. *Jersey Leather Co.*, 100 N. J. L. 300; *Brewer* v. *New York, L. E. & W. R. R. Co.*, 124 N. Y. 59; *County Comrs.* v. *Timmons*, 133 Atl. Rep. 322.)

FINCH, J. There is no dispute concerning the material facts in this statutory death action.

The plaintiff's intestate died as a result of injuries received when a telephone pole on which he was working fell. At the time of the accident the deceased, Thomas S. Storm, was in the employ of the Westchester Lighting Company and was engaged in removing from the pole certain cross arms and braces owned by his employer, the lighting company. The pole was owned by the defendant, the New York Telephone Company, and was one of several situated on the southerly side of Westchester avenue in or near the village of Port Chester in Westchester county. The poles were used by the defendant to carry its own wires but it also leased to the West-

chester Lighting Company the right to string certain of its wires on the poles and the lighting company's employees had a right to be upon the poles.

The defendant inspected the poles along the line and discovered that some of the poles, including the one in question, were in a defective condition as a result of the existence of dry rot in the butts of the poles. The poles were replaced by the defendant in 1928 and it transferred its attachments from the old pole line to the new pole line, with the exception of one cable, together with its messenger strand or support wire. Under the rule and practice existing between the companies each removed its own wires and attachments from the poles. In December, 1928, the telephone company notified the lighting company in writing to remove its attachments lrom the old poles. The lighting company thereupon erected its own line of poles on the opposite side of the street for the purpose of transferring its attachments to these new poles.

Several days prior to the accident the district supervisor of the defendant went to the place where the lighting company's men were working. There he met the assistant district superintendent and the foreman in direct charge of the work of the Westchester Lighting Company and warned them concerning the defective and deteriorated condition of the poles. Frost, the assistant district superintendent of the lighting company, in turn notified the gang foreman of the lighting company " to be sure to pike or rope the poles." Not content with this the defendant notified also the district superintendent of the lighting company. The employees who were thus given personal notice at the very place of the work told the district supervisor of the defendant not to worry, and that they would assume the care. At the trial they admitted that they were warned and that they understood that the poles were in bad condition and that precautions should be taken in doing the work. The exact language used to

the assistant district superintendent and foreman of the lighting company before the attachments were removed was, " For God's sake be careful because we know and you know that those poles are not sound. They are old and deteriorated." To which the foreman replied, " O. K., Fitz. Don't worry about it. I will take care of it."

Nevertheless no precautionary measures were employed by the lighting company. The customary practice of piking or guying defective poles, a practice which admittedly is very effective in preventing the falling of poles and would have prevented the fall of this pole, was completely disregarded. Several of the linemen of the lighting company climbed the pole in question on the day of and the day before the accident. The lineman on the pole before the deceased cut all the lighting company wires and when the last wire was cut it was noticed that the pole swayed a bit. It is not disputed that if the lighting company had not by its own act cut its wire the pole would have remained safe to climb. The deceased, Storm, was then ordered to climb the pole to remove the cross arms and other remaining attachments of the lighting company. While he was engaged in doing this work the pole fell, fatally injuring him.

The jury rendered a verdict in favor of the plaintiff. It made two special findings. It found that notice of the defective condition of the pole was given by the defendant to the Westchester Lighting Company. Nevertheless it also found that the accident was due to the concurring negligence of the defendant and the Westchester Lighting Company. The Appellate Division has unanimously affirmed the judgment rendered on this verdict.

What was the duty owing by the defendant to the deceased lineman, Storm? Was this duty violated? A proper determination of this cause depends upon the answers to these two questions.

The employer of the deceased was a lessee of the right to maintain cross arms, attachments and wires on the

pole. The relationship, however, was not one where the defendant leased exclusive possession of the pole. Although the lighting company obtained certain fixed rights the defendant owned and continued to use the pole for its own wires. The defendant, therefore, cannot claim that the duty owed by it to Storm was only that which a landlord normally owes to the employees of its tenants. The defendant, in giving the right to the lighting company to maintain wires on the poles, knew that this would necessitate the presence of linemen on the poles for repair and removal purposes.

Under ordinary circumstances the defendant is required to use reasonable care to provide safe poles. (*Murphy* v. *Rochester Telephone Co.*, 208 App. Div. 392; affd., 240 N. Y. 629.) Obviously where the unsafe condition of a pole necessitates removal of wires in order to replace the pole the owner cannot be required to furnish a safe pole. (See *Mullin* v. *Genesee County Electric L. P. & G. Co.*, 202 N. Y. 275; *Kowalsky* v. *Conreco Co.*, 264 N. Y. 125.) Under such circumstances the duty imposed is to use reasonable care to give warning to the linemen.

Did the defendant exercise reasonable care to warn the deceased lineman? The defendant notified the assistant district superintendent and the foreman of the lighting company, present at the place where the work was being performed, that the pole was in a dangerous condition and that commensurate care should be taken. A similar warning was given to the district superintendent of the lighting company. Warning of danger was thus given to all men in charge of the work and to all supervisory officials of tne decedent. Frequently work is done on telegraph or telephone poles that are in a dangerous condition. It is customary for the workers to pike or guy such poles, thereby eliminating the danger. It was reasonable for the defendant to expect that the Westchester Lighting Company would employ such safety measures after it had been warned of the danger. " The risk reasonably to be perceived defines the duty to be

obeyed." (*Palsgraf* v. *Long Island R. R. Co.*, 248 N. Y. 339, 344.) In *McInerney* v. *D. & H. Canal Co.* (151 N. Y. 411, 416) the question presented was whether the defendant railroad company discharged its full duty by notifying the proprietor of a lumber yard that it was sending its engine and crew into the yard on a siding for the purpose of switching cars. The proprietor failed to notify one of his employees who was injured between two cars when the engine backed into one of them. This court in affirming the judgment of nonsuit said: " It would, doubtless, have been a careless and negligent act for the engine crew, upon being sent for, to have entered the yard of the plaintiff and begun the work of coupling and moving cars without notice to Willard or his representative, but they discharged their whole duty to plaintiff and to all the regular employees in the lumber yard when they notified Willard on the day of the accident of their readiness to proceed with his work, and thereupon entered the yard with the engine and coupled and moved the cars in obedience to his orders."

To require the defendant to bring notice home to every employee of the lighting company who might possibly be involved on this job on penalty of otherwise failing in duty would result in imposing a standard of duty exceeding reasonable bounds. The defendant, to insure the giving of such notice, would probably find it necessary to station a man at every dangerous pole at all times that it was likely that the lighting company's employees might come to remove its wires. The Appellate Division has said that the defendant should have placed placards on the poles or taken similar precautions. The poles were on a public street and the placing of warning placards on the poles where they would be plainly visible to the linemen about to climb the pole would also make the placards accessible to those who might remove them long before the linemen arrived. The warning given the foreman at the place the work was being done and to all the

supervisory officials was much more likely to protect the deceased than the placing of the placard on the pole.

There is a clear line of demarcation between a wayfarer on a highway who is injured by the falling of a pole with which he has no connection at all and an employee, injured in the same manner, of one who is a lessee of rights and property in and upon the pole and whose acts helped to create the very situation out of which the accident occurred. (Cf. *Heilback* v. *Consumers' Brewery*, 207 N. Y. 133.) In the former case the wayfarer cannot be expected to possess any notice or knowledge at all, whereas in the latter case the employee has placed himself in a relationship whereby it may be reasonably assumed that notice to his supervisory officials will be communicated in the ordinary course to all employees on the work. Any duty on the part of defendant to warn of the condition of the pole would ordinarily be discharged when defendant notified all supervisory officials of the decedent. They knew what employees of theirs had assumed such relationships to them that they would be put to work on this job. Defendant and all the world except these supervisory officials were ignorant of this knowledge. To require the defendant to attempt to learn the identity of each and every employee of the lighting company, who was and would be involved on this job, would not only be wholly unreasonable but it would in all probability prove both futile and impossible since the supervisory officials of the lighting company might shift at any time, or be compelled to shift, the employees assigned to this work.

A customary practice or general usage may be admitted in evidence as tending to show what is reasonable care. (*Garthe* v. *Ruppert*, 264 N. Y. 290, 296.) Thus if it were customary among companies that maintain telephone poles to place placards on poles that are dangerous, or to blaze or chip them, evidence of the failure to comply with the custom might be admitted as evidence of negligence.

The record contains no evidence of the existence of any such custom.

The defendant, by warning all supervisory officials of the lighting company, complied with the requirement that it exercise reasonable care to warn of the danger.

The judgment of the Appellate Division and that of the Trial Term should be reversed and the complaint dismissed, with costs in all courts.

CRANE, Ch. J., LEHMAN and CROUCH, JJ., concur; O'BRIEN, HUBBS and LOUGHRAN, JJ., dissent.

Judgments reversed, etc.