Fboessel, J.
(dissenting). We dissent and vote to reverse. The issue before us relates to the liability of Garrick, the third-party defendant. The trial court found the third-party plaintiffs negligent, apart from their concession of liability, and that Garrick was the active and primary wrongdoer. The Appellate Division held ‘ ‘ that the place where the plaintiffs worked and where the accident occurred was not a place within the scope or meaning of section 200 [Labor Law] hence the third-party plaintiffs could not recover over against Garrick.
We are not unmindful of the exceptions to the general rule that it is the duty of a general contractor of a building, under section 200 of the Labor Law and at common law, to provide his employees and those of his subcontractors with a safe place to work, and that the duty is nondelegable (Wohlfron v. Brooklyn Edison Co., 238 App. Div. 463, affd. 263 N. Y. 547). Among these exceptions are situations: (1) where the structure is defective and the workmen are engaged for the specific purpose of correcting or repairing the defect, since no “ responsibility rests upon an owner * * * to one hurt through a dangerous condition which he had undertaken to fix ” (Kowalsky v. Conreco Co., 264 N. Y. 125, 128); (2) “ where the prosecution of the work itself makes the place and creates the danger ’ ’, i.e., “ when the very work in which the servant is engaged renders it unsafe ” (Mullins v. Genesee County Elec. Light, Power & Gas Co., 202 N. Y. 275, 279); and (3) where the machinery and tools of a subcontractor are defective (Iacono v. Frank & Frank Contr. Co., 259 N. Y. 377 [a hod hoist]). The instant case does not fall within any of these exceptions. The plaintiffs were not employed to correct or repair a defect in this building in course of construction; the work of pouring concrete in which they were engaged did not create the danger; and here we are not dealing with machinery and tools.
The massive double-deck structure consisting of countless reinforcing steel rods which were to become a permanent part of the building, as well as the form work attached to and extending from the third to the fifth floor over the entire area of the proposed 40 by 60 foot auction room, had been completed and properly so. It created in effect a temporary fifth floor and had become a place to work, particularly for the 50 men (including 12 of the plaintiffs) who were later to pour concrete. The 13th plaintiff was on the completed third floor *58 when injured.. Five- or six days before the accident,, carpenters removed the support, around the spandrel beam, thus creating a highly dangerous condition to the entire structure,, of which the concrete men and other employees of other subcontractors, so far as appears, knew nothing,
Assuming the general contractor had notice of this, highly dangerous condition,, as found by the trial court (which finding the Appellate Division did not pass upon), can it fie said that it had no duty whatever, to, see that the danger was eliminated in the face of the following facts-; (a) The specifications provided that the subcontractor was not to pour the cement until the, reinforcing steel and. anchors were inspected, and was not to remove forms and shoring- until the concrete was adequately setr (b). construction superintendent Orr’s testimony that ■ -1 * * % was placed on the job to see that all contracts of subcontractors of the City Construction Company were carried out in accordance with the requirements of the plans and specifications, and snob contracts as might be included in the specific contract. I also coordinated the activities on the job, between the architects, the structural, engineers, various subcontractors, and the [tenant] (e) Qrr’g testimony that the - general contractor did make a check on how long; Carriek allowed forms to exist around the cement before their removal; it also checked “ on when they started stripping it kept general records of the typ.e of work that was performed in each location; and (d) inspections were made by the general contractor’s president, its general superintendent,, its. construction superintendent Orr and his assistant, virtually daily?
This is not a machinery, tool or appliance case as in Iacono v. Frank & Frank Contr. Co. (259 N. Y. 377, supra), Broderick v. Cauldwell-Wingate Co., (301. N. Y. 182, 187) is also clearly distinguishable, for there we pointed out that the ‘ ‘ formwork was, not intended as a place, of work but, on the contrary, consisted of the work itself ’ \
In the case before us, the accident did not occur during the progress of the work of erecting the massive double-deck structure that had been completed. The danger was, created, not by reason of the work the 12 plaintiffs were doing in pouring concrete, but five or six days earlier by the removal of part of the structure’s supports. The fact that this structure was *59 originally cheated by plaintiffs’ employer does not automatically insulate the general contractor against liability for accidents arising in connection therewith (Thorsen v. Slattery Contr. Co., 272 App. Div. 931).
Despite the obligations of the general contractor under the plans and specifications as previously outlined, its duty to inspect, to check, to give approval 'and to exercise supervision and general control, and the highly dangerous condition of which the trial court found it had notice, under the prevailing opinion it is being absolved from all liability — apart from the concession — not only to the 12 plaintiffs whose place of work was the temporary fifth floor aforesaid, hut the additional plaintiff who was injured while on the completed third floor. In our view, such a holding is unduly restrictive of the liability of owners and general contractors.
The judgment should be reversed, the third-party complaint reinstated, and the matter remitted to the Appellate Division to determine whether the third-party plaintiffs were chargeable with notice of the highly dangerous condition — a question of fact which it has not passed upon — and for such further proceedings as may be necessary, not inconsistent with this opinion.
Judges Dye, Fuld, Van Voorhis and Burke concur With Judge Desmond ; Judge Froessel dissents in an opinion in which Chief Judge Conway concurs.
Judgment affirmed.