265 So.2d 533 (1972)
TENNESSEE CORPORATION and Hartford Accident and Indemnity Company, Appellants,
v.
LAMB BROTHERS CONSTRUCTION COMPANY, Inc., a Florida Corporation, et al., Appellees.
Nos. 71-312, 71-331 and 71-378.
District Court of Appeal of Florida, Second District.
August 2, 1972.
*534 Calvin A. Pope of Pope & Burton, Tampa, for Hartford Accident and Indemnity Co.
Thomas L. Clarke, Jr., of Langston & Massey, Lakeland, for Tennessee Corp.
Wallace L. Storey, Bartow, for Lamb Brothers Constr. Co., Inc.
McNULTY, Judge.
These consolidated cases involve a negligence action brought by appellant Tennessee Corporation against Lamb Brothers Construction Company, and the latter's third party action for possible indemnification and for suit monies over against its own liability carrier, Hartford Accident and Indemnity Company, which had disclaimed coverage. After a non-jury trial judgment was entered in favor of defendant Lamb Brothers as against Tennessee Corporation on the negligence aspect of the case, and further in favor of Lamb Brothers for expenses, attorneys' fees and costs against Hartford for its failure to defend on behalf of Lamb Brothers.
Considering the negligence aspect of the case first, the relevant undisputed facts are these: Tennessee Corporation owned and operated an anhydrous (ammonia) plant in Tampa. Florida Gas Company, a supplier of natural gas, furnished gas to be used both as fuel for Tennessee's manufacturing operation and for raw materials used in the finished product. The natural gas supplied by Florida Gas originated in south Texas and was transmitted across the Gulf of Mexico and several states to Florida. Thence, via a pipeline, it was carried through several Florida counties, one of which was Suwannee County wherein the accident involved herein occurred. The pipeline terminated in Tampa where the gas was distributed to the various Tampa customers of Florida Gas, Tennessee Corporation being among them. Coincidentally, Florida Gas and Tennessee Corporation had agreed by written contract that in the event of any shortage in the natural gas supply available for distribution by Florida Gas then Tennessee Corporation would be considered a low priority customer, and service and delivery to Tennessee would be discontinued prior to discontinuance of service to many other customers of Florida Gas.
*535 Lamb Brothers, meanwhile, was a land clearing company; and at the time of the accident herein it was engaged in a land clearing operation in Suwannee County in close proximity to the natural gas pipeline referred to above and which supplied Florida Gas. A terrific explosion occurred, resulting in the eruption of some 800 feet of the pipeline and also, of course, interruption in the flow of gas to Florida Gas. Ultimately, Florida Gas was unable to supply Tennessee and pursuant to their contract aforesaid terminated service. Tennessee was forced to close down its plant, thereby suffering consequential loss of business and profits for which it seeks recovery in this suit.
It is alleged, and the evidence tended to show, that the explosion was caused by the negligent operation of a bulldozer owned by Lamb Brothers and operated by one of its employees in the land clearing operation aforesaid. No one witnessed the explosion, save perhaps the bulldozer operator who was found dead lying behind the bulldozer, but circumstantial evidence otherwise supported Tennessee's version of events. In any case, the trial judge found it unnecessary to expressly determine the question of negligence. He found as the trier of fact, however, that assuming negligence, such negligence was not the proximate cause of Tennessee's damages. We cannot say, as a matter of law, that he could not so find.
To constitute actionable and proximate causation in a negligence action there must be such a direct, and continuous sequence of events flowing between the negligent act and the injury complained of that it can reasonably be said that the result was a natural and probable consequence of the act.[1] Stating the rule, our Supreme Court said in Cone v. Inter County Telphone and Telegraph Co.[2] that:
"... when the loss is not a direct result of the negligent act complained of, or does not follow in natural ordinary sequence from such act but is merely a possible, as distinguished from a natural and probable, result of the negligence, recovery will not be allowed... . `Natural and probable' consequences are those which a person by prudent human foresight can be expected to anticipate as likely to result from an act, because they happen so frequently from the commission of such act that in the field of human experience they may be expected to happen again." (Italics supplied)
Certainly, a trier of fact could have found here that the damages complained of were too indirect, were not in continuous natural sequence and were therefore not reasonably "foreseeable" by a person of prudent human foresight. Given these conclusions, then, they would be too remote under Florida law.[3] Put another way, if we are to upset the trial judge's finding of remoteness, we would have to say as a matter of law, assuming the negligence, that not only was the explosion foreseeable as a result of the negligent operation of the bulldozer, and that the interruption of supply to Florida Gas was a natural and probable consequence thereof, all of which would probably be so, but following this that it was also foreseeable that the explosion would unduly deplete the volume of a common supply of natural gas in the hands of Florida Gas, which would then result in the interruption of service to a low priority contract customer of Florida Gas (Tennessee) who, in turn, was a commercial user and who ultimately suffered consequential business loss. Furthermore, even though time and distance are certainly relevant factors to be evaluated in ascertaining foreseeability, we would have to conclusively visit such clairvoyance upon a bulldozer *536 operator in Suwannee County when the damages complained of were suffered more than 100 miles away in Tampa. We cannot thus contradict the finding of remoteness and, at the same time, recognize the proper function of the trier of fact in evaluating the evidence with a view toward concluding therefrom whether the injuries complained of are the "natural and probable consequences" spoken of in Cone, supra, which a person of "prudent human foresight" would have been expected to anticipate as "likely to result" because they happen so frequently that in the "field of human experience" it should have been expected that they would happen again.[4]
Notwithstanding, Tennessee has asked us to apply the "but for" test in resolving the question as a matter of law to the contrary. However, we have not overlooked, and in fact concede, that that which occurred would not have occurred "but for" the explosion. Indeed, it can be said in any case in which there are intervening or collateral factors which contribute to the ultimate result that "but for" the first act the result would not have occurred. But that doesn't mean necessarily that the first act is the proximate cause. As an example otherwise, of course, if an intervening cause is an independent, efficient means of producing the result the initial act is not the proximate cause even though "but for" such act the intervening cause would not or could not have come into play. We think, therefore, that the "but for" test is conceptually unsound as a solution in most of these cases, whether there is an intervening, independent efficient cause or not because the damages could flow either from such intervening cause, if one exists, or, as found here, be an indirect and non-sequential unforeseeable consequence. In neither case does the "but for" test afford a viable solution.
Similarly, we reject the "substantial factor" test, by which it is said that a cause is proximate if it is a "substantial factor" in bringing about the result.[5] This test was also renounced by our sister court in the First District in Pope v. Pinkerton-Hays Lumber Company.[6] Such a test, it appears, negates foreseeability entirely and offers no greater solution in these matters than the foreseeability concept it replaces.
We consider now the second aspect of this case which relates to appellant Hartford's liability to Lamb Brothers for its failure to defend the action. Lamb Brothers contends that the allegations of the complaint are sufficient to state potential liability arising out of the operation of its land clearing business and that Hartford issued liability coverage to insure against such liability and to defend against all suits based thereon. Hartford on the other hand contends that injury resulting from destruction of underground conduits or pipes, when occurring during land grading, is a specific hazard which is excluded from general land clearing coverage under the XCU (explosion, collapse and underground) exclusions of the policy, and that the pleadings showed this.
The pertinent provisions of XCU exclusions relate to:
"... Injury to or destruction of wires, conduits, pipes, mains, sewers or other similar property, or any apparatus in connection therewith, below the surface of the ground, if such injury or destruction is caused by and occurs during the use of mechanical equipment for the purpose of grading of land, paving, excavating *537 or drilling, or to injury to or destruction of property at any time resulting therefrom... ." (Italics added.)
The trial judge found these provisions ambiguous, apparently as regards land grading vis a vis land clearing and, resolving them against the company, held that they could not apply here. That is to say, he in effect held that the carrier could not rely on the exclusion concerning grading because it knew Lamb Brothers was a land clearing company when it issued the policy; and obviously perceiving no difference between land grading and land clearing insofar as coverage was concerned he impliedly concluded that if the policy issued here would not include that which allegedly caused the explosion herein it would not cover any accident within the scope of Lamb Brothers land clearing business. We think he erred in this respect.
In the first place, there is, or at least may be, a real difference between land clearing and land grading, particularly as either relates to the hazards insured against or excluded in the policy before us. Land grading obviously involves the leveling and contouring of land. Land clearing on the other hand involves a variety of activities including the cutting or uprooting of trees and other vegetation, drainage operations and, occasionally, land grading. But while land grading may be only a small part of a land clearing operation, this is no reason to refuse to give effect to specific exclusions involving certain hazards from grading or from any other aspect of land clearing as long as they do not conflict with other portions of the policy; and we do not think that excluding some damage underground caused by grading conflicts with coverage generally as regards other hazards. Accordingly, we cannot agree that the exclusion in question is inherently ambiguous when it refers to injury caused by the "destruction" or "injury" of "pipes ... below the surface of the ground if such injury or destruction is caused by... the use of mechanical equipment for the purpose of grading of land... ."
Now, the trial judge made no express finding as to whether indeed an injury did occur to an underground pipe while grading land, as specified in the exclusion, nor, conversely, did he find that an injury occurred during a non-excluded aspect of land clearing. In other words, he didn't determine at all how the accident happened. Unquestionably he did not do so because of the ambiguity he perceived as aforesaid under which he in effect estopped the carrier from asserting that there is a material difference how the accident happened. But he should have made such determination, notwithstanding that negligence may not be involved, because there was no inherent ambiguity in the exclusion as we have hereinabove held and because such a precedent determination is indispensible to an ultimate determination in this case of whether there was an obligation on the part of the carrier to defend.
We digress, momentarily, because to more fully understand the relevance of such a determination to the question we are called upon to answer, we must explore in some depth a liability carrier's obligation generally to defend its insured under a covenant to do so in the policy. The general rule on this latter point is that a liability carrier must defend its insured if the initial pleadings fairly bring the case within the scope of coverage even though, ultimately, there is no liability.[7] Ordinarily, then, we must look to the complaint in the first instance to determine prima facie the duty to defend. If the complaint clearly alleges facts within coverage there is no *538 question, and a carrier's refusal to defend presumably would be in bad faith.[8] On the other hand, if the facts alleged in the initial pleading clearly bring the case within an exclusion, the carrier might well have a right to disclaim coverage and refuse to defend. We are not called upon here, however, as we shall see, to decide (and we do not decide) a carrier's amenability to a claim for suit monies if, notwithstanding that the initial pleading alleges facts within an exclusion, the proof at trial of the principal suit or at a severed trial between the insured and the carrier establishes facts within coverage even though coverage had been disclaimed by the carrier under the initial pleading. That question is not before us because the complaint herein is in neither category set out above; that is to say, it alleges facts which are neither clearly within the exclusion nor clearly within coverage. To be sure, it alleges injury to an underground pipe by the use of mechanical equipment alright, but it is not specified whether such injury occurred while the equipment was being used for grading on the one hand or during the use of such equipment for some nonexcluded aspect of land clearing on the other.
So, since the allegations in the complaint do not initially solve the question posed in this case, we believe the responsibility vel non to defend must now depend solely on the operation which, assuming causal connection, was in fact being performed at the time of the accident. If that operation was grading, which is within the exclusion, there was no duty to defend; if it was a non-excluded aspect of land clearing then the insurance company declined to defend at its own risk, and it would now be liable for the costs of such defense because under its contract it should have defended. We now see the importance in this case of making a determination of how and under what circumstances the accident in fact occurred, and the cause must be remanded for such a determination.[9]
Accordingly, the judgment for Lamb as against Tennessee is affirmed. The judgment for Lamb as against Hartford, is reversed and remanded for further proceedings not inconsistent herewith.
Affirmed in part, reversed in part.
PIERCE, C.J., and HOBSON, J., concur.
NOTES
[1] See, e.g., 23 Fla.Jur., Negligence, § 29 at p. 274.
[2] (Fla. 1949), 40 So.2d 148, 149.
[3] See, Cone v. Inter County Telephone & Telegraph Co., id.; Atlantic Coast Line R. Co. v. Ponds (Fla.App. 1963), 156 So.2d 781; and General Telephone Co. of Florida, Inc. v. Mahr (Fla.App. 1963), 153 So.2d 13.
[4] N. 2, supra.
[5] See, also, e.g., The Restatement of Torts 2d, § 435. We note, however, that the Restatement "substantial factor" test is so qualified by comments therein that it approaches the Florida foreseeability doctrine. See, id., §§ 431-433 and commentary.
[6] (Fla.App. 1960), 120 So.2d 227, n. 7, at p. 229. That decision was affirmed by the Supreme Court, although other aspects of the District Court's opinion were overruled. The portion with which we are here concerned, however, was expressly approved.
[7] See, e.g., Coblentz v. American Surety Company of New York (5th Cir.1969), 416 F.2d 1059; New Amsterdam Casualty Company v. Knowles (Fla. 1957), 95 So.2d 413; and Bennett v. Fidelity & Casualty Company of New York (Fla.App. 1961), 132 So.2d 788.
[8] We do not consider nor decide here the carrier's rights in the premises if subsequent pleadings or proceedings reveal noncoverage.
[9] From the photographs in the record, it is likely that some land grading was taking place but we cannot make such a factual determination ourselves, especially as it may relate to the precise time of the explosion.