327 So.2d 121 (1976)
LAKE PARKER MALL, INC., and Utica Mutual Insurance Company, Appellants,
v.
Laurenne A. CARSON, As Administratrix of the Estate of Dennis J. Carson, Deceased, Appellee.
No. 74-1372.
District Court of Appeal of Florida, Second District.
February 18, 1976.
*122 John I. Van Voris, of Shackleford, Farrior, Stallings & Evans, Tampa, for appellants.
Larry S. Stewart and Ira H. Leesfield, of Frates, Floyd, Pearson, Stewart, Proenza & Richman, Miami, for appellee.
SCHEB, Judge.
The appellants were defendants below and appeal a judgment entered against them upon a jury verdict in favor of the plaintiff/appellee in a wrongful death action.
The issues we address here are:
(1) Whether the standard of care imposed on a shopping center which maintains a master switchboard to meter electricity to its tenants is equated with that of an electric utility; and
(2) Whether the shopping center's failure to maintain a required disconnect switch in operable condition was the proximate cause of an explosion resulting in the death of plaintiff's decedent.
Carson, plaintiff's decedent, was a vocational student working during the summer as an electrician's helper for M & M Electric Co. He died on October 16, 1972, as a result of injuries resulting from a tragic explosion at the electrical switchboard at Lake Parker Shopping Mall in Lakeland where he was installing an electric meter on the preceding August 22nd.
The City of Lakeland furnishes electrical energy to the Mall, a large shopping center which maintains a switchboard containing numerous electrical meters, all owned by the City but installed there by Mall and used for the purpose of measuring electricity consumed by each of its tenants. The tenants are billed directly by the City for electrical energy. Carson's employer, M & M, was an independent licensed electrical contractor which the Mall hired to install meters and connect electrical service to its tenants. At the time of the accident, Carson, Boek and their supervisor, Ritter, all employees of M & M, were installing a meter to connect electricity to a new tenant. This involved plugging the meter into the switchboard. This is a technical operation, but is similar to plugging an electrical *123 cord into a wall socket. A main disconnect switch called a "Pringle" switch is attached to the electrical switchboard. This is a safety feature required by Fla. Stat. Ch. 553, which adopts the National Electrical Code as setting minimal standards in this field and provides for local enforcement of such standards. If operative, you can throw the switch and effectively disconnect the current which otherwise would flow through the board to the various outlets in the shopping center complex. At the time of the accident this Pringle switch had been defective for about eight months. Watkins, manager of the Mall, was well aware of this and had made several attempts to obtain repairs. Ironically, on the day of the accident a manufacturer's representative was present to attempt to repair it.
The gravamen of the plaintiff's cause of action was: First, negligence of the defendant shopping mall in its failure to maintain its electrical facilities in the standard of care required by law, specifically Watkins' alleged negligence in failing to have the switch repaired in a timely manner; and second, failure to warn the plaintiff's decedent of that condition.
To sustain any cause of action predicated on negligence, it is fundamental that the plaintiff must establish:
(1) Existence of a duty on the part of the defendant to protect the plaintiff from the injury or damage of which he complains;
(2) Failure of the defendant to perform that duty; and
(3) Injury or damage to the plaintiff proximately caused by such failure.
See 23 Fla.Jur., Negligence, § 9; Tims v. Orange State Oil Co., Fla.App.2nd, 1964, 161 So.2d 844.
One who hires an independent contractor is not ordinarily liable for injuries sustained by that contractor's employees in their work. Florida Pub. Co. v. Lourcey, 1940, 141 Fla. 767, 193 So. 847. There is a duty to warn employees of an independent contractor of potential danger when the owner has actual or constructive knowledge of a dangerous condition of his premises. Somers v. Meyers, Fla.App.1st, 1965, 171 So.2d 598. However, it is generally held that the duty is satisfied by notice to the contractor or supervisory personnel. See Fla. Power & Light Co. v. Robinson, Fla. 1953, 68 So.2d 406, which quoted approvingly from Storm v. New York Tel. Co., 1936, 270 N.Y. 103, 200 N.E. 659. See also, Gulf Oil Corp. v. Bivins, 5th Cir.1960, 276 F.2d 753; Crawford Johnson & Co. v. Duffner, 1966, 279 Ala. 678, 189 So.2d 474; Levesque v. Fraser Paper Limited, 1963, 159 Me. 131, 189 A.2d 375; Hunt v. Laclede Gas Co., Mo. 1966, 406 S.W.2d 33; Grace v. Henry Disston & Sons, 1952, 369 Pa. 265, 85 A.2d 118; Citizen's Utility Inc. v. Livingston, 1973, 21 Ariz. App. 48, 515 P.2d 345.
There was considerable evidence to show Carson knew of the defective Pringle switch and that the switchboard was "hot" at the time of the accident. In fact, the lights in the room where he was working remained on while the work was progressing. If the switch had been operative and the power in the board had been shut off, the lights would have gone off also since the switch controlled the electricity flowing into the entire building. The plaintiff, nevertheless, suggests the jury could have inferred from other testimony that Carson had not been properly notified of the defective switch and did not know the board was energized. Even assuming this, arguendo, the Mall had discharged the ordinary legal duty on the part of a landowner since there was undisputed evidence that the principals of M & M had been notified. In fact, Maze, one of the principals in M & M learned of this malfunction several weeks prior to the accident. Ritter, who was supervising the operation at the time of the accident testified that he was knowledgeable about the defective switch. *124 Moreover, meters had been installed previously on the same switchboard by M & M despite their awareness of the defective switch.
Here, however, the plaintiff contends the Mall which maintained its own electrical switchboard did not discharge its legal duties since it was obligated to exercise the highest degree of care to Carson, notwithstanding, he was an employee of an independent contractor. The plaintiff relies principally on Orr v. U.S., 5th Cir.1973, 486 F.2d 270, which in applying Florida law held that because the United States owned power lines and poles and controlled the distribution of electrical current, it owed a nondelegable high degree of care to employees of an independent contractor working on these facilities. The court there emphasized the high degree of care was necessitated by the danger of high voltage electricity and held the United States liable for having allowed wires to remain in a dangerous condition and having made no attempt to warn the plaintiff employee of an independent contractor of the danger involved in working on the particular pole where he was injured. The plaintiff here analogizes Orr to the situation at the shopping mall and justifies this higher standard of care being imposed on the defendant on grounds that the Mall was in reality a redistribution center for electrical energy which it was supplying to its tenants.
If the standard advocated by the plaintiff is imposed upon the defendant, then, of course, the Mall could become liable also for any negligence of M & M as an independent contractor if M & M failed to make its employees aware of a known danger. More importantly, the defendant might then be held responsible for even permitting Carson to perform work on its switchboard without the necessary disconnect switch being operable. This is true because in that posture the Mall would be held to the same standard of care as an electrical utility and could be charged with certain nondelegable duties. See Fla. Power & Light Co. v. Price, Fla. 1964, 170 So.2d 293, wherein the defendant power company was held not liable for the negligence of an employee of its independent contractor Harlan Electric, the court holding, however, that a power company could be held legally responsible to such an employee had there been any evidence of negligence on its part.
The defendant, on the other hand, contends it is held only to the ordinary standard of care. It argues it met this standard when it made M & M knowledgeable about the defective Pringle switch and did nothing further which could have induced the plaintiff's decedent to believe the Mall's switchboard had been deenergized. Defendants place reliance on Quinnelly v. Southern Maid Syrup Co., Inc., Fla.App. 2nd, 1964, 164 So.2d 240, which held a complaint by an employee of an independent contractor against a landowner did not state a cause of action for injuries sustained while he was working on a construction site near a truck crane where that crane's boom struck high voltage wires.
We do not think the shopping mall is sufficiently within the ambit of the Orr principle to hold it to the standard contended since the Mall was not actually a generator or bulk seller of electricity. If the Mall fell into these categories, we could presume a degree of expertise in the field of electricity on its part that is difficult to presume here. Many businesses, including small and large shopping centers, apartment houses and mobile home parks have master switchboards installed for the purpose of metering each tenant's consumption of electricity, but the electricity they consume is usually supplied by and billed by a utility. Should they, too, be held to the standard advocated by the plaintiff? Surely, when work is required involving their switchboards, including meter changes, these businesses, like the defendant shopping mall in this case, expect *125 to rely on licensed electrical contractors. It is inconceivable to us that the Mall should then become liable to the employees of the very expert contractor it relied upon when the contractor had been completely aware of the dangerous condition but nevertheless elected to proceed.
A second and independent ground for reversal, in our judgment, is the plaintiff's failure to establish that the Mall's alleged negligence of failing to maintain a Pringle switch in operative condition was the proximate cause of Carson's injuries and resultant death. The trial judge recognized this problem in denying the plaintiff's post trial motion when he stated:
A second point raised by the facts and urged by the defendants is that the legal causation of the electrical explosion which injured and caused the death of the decedent was not established by the evidence. While it was shown that the main disconnect switch did not function, there is no direct evidence to connect that defect with the explosion. While the Court concedes this argument, it does appear to the Court that the jury could have believed from the evidence either that the switch could have been thrown to accommodate the workmen, including the decedent, and shut off the power to the board or that the switch mechanism, which included safety device, would have avoided the explosion had those devices functioned properly. (Emphasis supplied)
To establish the required element of proximate cause in a negligence action, there must be evidence of such a direct and continuous sequence of events flowing between the negligent act and the injury complained of that it can be reasonably said the resulting injury was the natural and probable cause of the defendant's negligent act. Tennessee Corp. v. Lamb Bros. Const. Co., Fla.App.2nd 1972, 265 So.2d 533. The evidence here falls short of meeting that requirement. Even if we were to presume the standard of care contended by the plaintiff, negligence on the part of an electric power company cannot be proximate cause of an injury unless from all the circumstances the injury might have been reasonably foreseen by persons of ordinary intelligence and prudence. Simon v. Tampa Electric Co., Fla. App.2nd, 1967, 202 So.2d 209. It follows therefore, that unless, as a result of the defendants' alleged negligence of failing to maintain the required disconnect switch, the accident was reasonably foreseeable, there is no basis for holding a party, even a negligent one, liable.
The plaintiff attempted to establish that the defective Pringle switch constituted proximate cause through testimony of its expert, Gentili. He testified that as a general rule you should deenergize the board when working on it unless that is not possible. But he stated that if you are only inserting a meter, it is not necessary to deenergize it. Such testimony could hardly be said to furnish a basis for the jury to have found the defective Pringle switch to be the proximate cause of the accident. There was never any direct testimony to show the defective switch caused the explosion; in fact, no cause was ever established. At the conclusion of the plaintiff's case when the defendants moved for a directed verdict, the trial court reserved ruling and the defendants presented their case. In our review of the ruling denying such motion, we properly consider all the evidence in the case. 6551 Collins Ave. Corp. v. Millen, Fla. 1958, 104 So.2d 337.
During the defendants' case, Maze of M & M testified the switchboard should be deenergized, if possible, while work was being performed. Ritter, Carson's immediate supervisor who was present at the accident, testified he would have thrown the switch if it had worked. He did not, however, have the power cut off from the outside even though he knew this was possible. Neither Maze nor Ritter testified that *126 there was any foreseeable danger in plugging a meter into a "hot" board, except that normally incident to working with electricity; and while the accident probably would not have occurred "but for" the hot board, it was nowhere shown that the defective Pringle switch was the reason the board was "hot" nor, in turn, was it indeed shown that the "hot" board caused the explosion. This state of facts points up the inadequacy of the "but for" test of proximate causation; and we find no rational basis in the evidence to support a conclusion that the explosion was a "reasonably foreseeable" consequence of the "defective" Pringle switch any more than it would have been if the switch was in perfect working order but not turned off  a practice not unusual, as agreed by all the experts, particularly when simply installing meters.
Holding as we do that the trial court erred in not granting the defendant's motion for a directed verdict, it is unnecessary to address the defendants' remaining points on appeal concerning damages or the points on the plaintiff's cross-appeal addressed to that same subject.
Reversed.
GRIMES, J., concurs.
McNULTY, C.J., concurs specially.
McNULTY, Chief Judge (concurring specially).
I must comment on my concurrence with the conclusions of the majority.
I am not prepared to say at this time that this case does not fall within the ambit of Orr v. United States (5th Cir.1973), 486 F.2d 270. I would be inclined to think it does. It is the control and/or distribution of extraordinarily high voltage electrical current which gives rise to the high degree of care imposed on one who would undertake to handle or use highly dangerous commodities or instrumentalities; and it matters not whether he also manufactures it nor, indeed, whether he handles or distributes it for a profit.
In any case, we need not reach that question since, in my view, even if there were the high duty imposed on appellants as required by Orr, supra, I would agree with the majority that there is no evidence to support a nexus between the defective "Pringle" switch and the explosion which resulted in the tragic death of Dennis Carson.