401 So.2d 1384 (1981)
John HORTON and Angela Horton; Joe H. Gilley and Betty Gilley, Appellants,
v.
GULF POWER COMPANY, Appellee.
Nos. SS-191, SS-192.
District Court of Appeal of Florida, First District.
August 13, 1981.
Norton Bond, Pensacola, for appellants.
Robert P. Gaines of Beggs & Lane, Pensacola, for appellee.
BOOTH, Judge.
This cause is before us on appeal from final summary judgment entered in favor of Gulf Power, appellee, in a suit for personal injuries sustained by Horton and Gilley, employees of Foster Wheeler, an independent contractor. The accident occurred on the premises of Gulf Power when a scaffold owned by Gulf Power fell. Foster *1385 Wheeler was using Gulf Power's scaffold in connection with its repair and maintenance work on a unit of the Gulf Power Generating Plant. Foster Wheeler had built the unit in question and regularly performed repair and maintenance service on the unit for Gulf Power. Gulf Power purchased the scaffold new and turned it over to Foster Wheeler. Foster Wheeler was responsible for assembling and testing the scaffold and knew that the load limit was two men. There were sticker markings on the scaffold stating the load limit. At the time of the accident there were six men, employees of Foster Wheeler, on the scaffold.
Foster Wheeler's foreman testified he had modified the scaffold to make it support more weight by having a device referred to as a "come-along" attached to the center of the scaffold which could be secured at each elevation where work was being done. At the time of the accident, however, the come-along was not in use. Further testimony was that Foster Wheeler's employees had damaged the scaffold bolts by over tightening, requiring that the bolts be replaced, and that there was a "home-made" piece welded at one end of the scaffold where it was fastened to the scaffold motor and air coil. The accident occurred when the two bolts in the home-made piece sheered off, causing the scaffold end to fall away from the motor.
Suit was filed against Gulf Power and the scaffold manufacturer, Spider Staging. As to the latter, the trial court denied summary judgment. Summary judgment was entered in favor of Gulf Power, the trial court holding:
Since Gulf Power Company furnished the scaffold, it had a duty to use reasonable care for the safety of the independent contractor's employees, but this duty was discharged by full and adequate warning to the independent contractor's superintendent. It had no duty to seek out and give individual warning to each employee of Foster Wheeler. It had no way of knowing which employees would be working on the scaffold, and it is common business practice to deal only with supervisory personnel when repair work is performed by independent contractors. It is generally held that the duty to warn employees of an independent contractor is satisfied by notice to the contractor or supervisory personnel. See Fla. Power and Light Co. v. Robinson, 68 So.2d 406 (Fla. 1953), which cited with approval Storm v. New York Tel. Co., 270 N.Y. 103, 200 N.E. 659. The reasons for this rule are clearly set forth in the Storm case. This was also recognized as being the law of Florida in Lake Parker Mall, Inc. v. Carson, 327 So.2d 121, 123 (Fla. 2d DCA 1976).
We agree with the trial court's statement of the law and determination that summary judgment be granted.
The duty of Gulf Power, as owner of the premises and of the scaffold, was to use reasonable care for the safety of the employees of the independent contractor, by giving notice of a dangerous condition known to the owner but unknown to the independent contractor and its employees. In Florida Power and Light Company v. Robinson, 68 So.2d 406, 411 (Fla. 1953), the Florida Supreme Court held that the owner's duty to warn is discharged by notice given to the supervisory personnel of the independent contractor, holding:
The case of Storm v. New York Telephone Co., 270 N.Y. 103, 200 N.E. 659, 661, is an excellent illustration of the application of the rule as to the duty of the owner of property to warn of danger ... The telephone company was held to have fulfilled its "duty * * * to use reasonable care to give warning" upon a showing that it had notified plaintiff's foreman [foreman of independent contractor] "to be sure to pike or rope the poles * * * because we know and you know that those poles are not sound... ."
In the Robinson case, the Florida Supreme Court ruled in favor of an employee of an independent contractor in his suit against the owner of the electric poles which were being repaired at the time of the accident. The basis for the holding in that case was the failure of the owner of the poles, who *1386 had knowledge of latent defects in certain poles that were to be climbed by the employees of the contractor, to give notice of those defects. The Florida Supreme Court contrasted the facts of the Storm case, supra, finding that, in the case before it, "the Power Company negligently failed to notify the independent contractor of the condition of Pole 35-L-7." 68 So.2d at 413.
In Storm v. New York Telephone Company, supra, the court held that the duty of the telephone company to warn of unsafe conditions of telephone poles was satisfied by the notification of supervisory officials of the independent contractor engaged in repairing the poles. The court expressly rejected the contention that the telephone company, as owner of the poles, had the duty to warn every employee of the lighting company or that placards should have been placed on the poles so that they would be visible to lineman about to climb the pole. In rejecting these contentions, the court held (200 N.E. at 661-662):
Warning of danger was thus given to all men in charge of the work and to all supervisory officials of the decedent... . To require the defendant to bring notice home to every employee of the lighting company who might possibly be involved on this job on penalty of otherwise failing in duty would result in imposing a standard of duty exceeding reasonable bounds... . [T]he employee has placed himself in a relationship whereby it may be reasonably assumed that notice to his supervisory officials will be communicated in the ordinary course to all employees on the work.
In Lake Parker Mall, Inc. v. Carson, 327 So.2d 121 (Fla.2d DCA 1976), cert. denied, 344 So.2d 323 (Fla. 1977), both the property owner and the independent contractor had knowledge of a defective main disconnect switch, but the employee of the independent contractor injured as a result of that defect was not warned. The opinion states the following rule (327 So.2d at 123, 125):
One who hires an independent contractor is not ordinarily liable for injuries sustained by that contractor's employees in their work... . There is a duty to warn employees of a independent contractor of potential danger when the owner has actual or constructive knowledge of a dangerous condition of his premises... . However, it is generally held that the duty is satisfied by notice to the contractor or supervisory personnel. [citations omitted]
... .
It is inconceivable to us that the Mall [owner] should then become liable to the employees of the very expert contractor it relied upon when the contractor had been completely aware of the dangerous condition but nevertheless elected to proceed.
The evidence here was that the supervisory personnel of the independent contractor who were in control of the scaffold and the operations being performed were aware of the load limitations and the danger of overloading the scaffold and that their knowledge was equal, if not superior to that of the owner.[1] Nor is the owner vicariously liable to the contractor's employee under the dangerous or hazardous work doctrine for the negligence of the contractor and its employees.[2] This case is to be distinguished from suits by third parties (non-employees) injured by dangerous conditions created on the premises by the contractor for which the owner may be held liable.[3]
*1387 A party moving for summary judgment must meet the requirements of Rule 1.510(c), Fla.R.Civ.P., by showing unequivocally that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. In the instant case, the rule of Storm v. New York Telephone Company, supra, adopted in Florida in Florida Power & Light Company v. Robinson, supra, and Lake Parker Mall, Inc. v. Carson, supra, establishes the duty of the owner/contractee to the employees of the independent contractor. The record before the lower court on motion for summary judgment fails to show any basis on which a jury could find a breach of that duty.
Accordingly, the judgment below is affirmed.
WOODIE A. LILES (Retired), Associate Judge, concurs.
ROBERT P. SMITH, Jr., C.J., specially concurs with written opinion.
ROBERT P. SMITH, Jr., Chief Judge, concurring:
I agree that the trial court properly granted Gulf Power summary judgment in this case, but I should prefer not to adopt its rationale that Gulf Power
had a duty to use reasonable care for the safety of the independent contractor's employees, but this duty was discharged by full and adequate warning to the independent contractor's superintendent.
A summary judgment finding that Gulf Power gave "full and adequate warning to [Foster-Wheeler's] superintendent" is made problematic by conflicting record evidence: ironically, Foster-Wheeler's superintendent says Gulf Power's manager, Mr. Lee, warned him about overloading the scaffold, but Lee denies having done so.
Because the majority finds that Foster-Wheeler's superintendent knew this scaffold had weight limitations and could fail if overloaded, and that his knowledge rendered Gulf Power's verbal warning unnecessary, both the possible conflict in the evidence and the warning theory itself  that the contractee as supplier of the scaffold had a duty to warn the contractor's supervisory personnel about overloading it  may become inconsequential. But to the extent this reasoning may imply either that Gulf Power had a duty to warn if (incredibly) Foster-Wheeler's supervisory personnel were ignorant of overloading dangers, or that an owner/contractee supplying a defective tool discharges his duty to the contractor's employees by giving "full and adequate warning" of its defects to the contractor's supervisors (or by proving their equivalent knowledge), I disagree with those implications and suggest that concepts deriving from a duty to warn do not control Gulf Power's liability or nonliability in this case.
Gulf Power is entitled to summary judgment simply because there is no evidence of any act or omission on its part that arguably was negligent. The scaffold Gulf Power supplied to Foster-Wheeler was perfectly sound in all respects. It bore legible decals stating its weight bearing limitations. The only danger pertinent to this case, associated with the scaffold, was a danger arising in the natural course of the work undertaken by Foster-Wheeler, the independent contractor: the danger of loading the scaffold, safe and suitable in itself, with too many men. In such a case, no defect in the scaffold can be blamed. In such a case, the contractee is no more required to warn the contractor and his employees, hired to perform the work that produced the danger at the place where it came to pass, than a householder is required to warn employees of his roofing contractor about the height of the roof and the dangers of falling. Florida Power & Light Co. v. Robinson, 68 So.2d 406, 412 (Fla. 1953):
[T]he rule requiring warning of danger does not require warning as to any dangers, latent or otherwise, arising in the course of the work being done, where the work itself makes the place and creates *1388 the danger  compare Mullin v. Genesee County Electric Light, Power & Gas Co., 202 N.Y. 275, 95 N.E. 689... .
In this case, as in Mullin,[*] "the work itself makes the [work] place and creates the danger," and the owner/contractee's nonliability to the contractor's employees depends neither on his having given a verbal warning nor on the extent of equivalent actual knowledge had by the contractor's supervisor.
This case is to be distinguished from Padilla v. Gulf Power Co., 401 So.2d 1375 (Fla. 1st DCA 1981), in which the record evidence did not foreclose Gulf Power's possible liability for negligence, independent or vicarious, in supplying a potentially dangerous machine that was repaired in a way obliterating the manufacturer's warning plate affixed to the machine.
I therefore concur in affirming the summary judgment.
NOTES
[1] Superior knowledge of the owner/contractee is basis of his duty to warn: Rist v. Florida Power and Light Company, 254 So.2d 540 (Fla. 1971); Melton v. Estes, 379 So.2d 961 (Fla. 1st DCA 1979); Wendland v. Akers, 356 So.2d 368 (Fla. 4th DCA 1978), cert. denied, 378 So.2d 342 (Fla. 1979); Ayala v. J.M. Fields, 390 So.2d 166 (Fla. 5th DCA 1980).
[2] Florida Power and Light Company v. Price, 170 So.2d 293, 297-298 (Fla. 1964); Christy v. Florida Power Corporation, 232 So.2d 744, 745 (Fla. 1st DCA 1970), cert. dismissed, 243 So.2d 158 (Fla. 1971).
[3] Florida Power and Light Company v. Price, 170 So.2d 293, 295-296 (Fla. 1964); Christy v. Florida Power Corporation, supra, Lowe v. U.S., 466 F. Supp. 895, 898, 899 (D.C. Fla. 1979), affirmed, 611 F.2d 76 (CA 5th 1980); compare, Maldonado v. Jack M. Berry Grove Corporation, 351 So.2d 967 (Fla. 1977), minor children of employees injured on owner/contractee's premises; see Peairs v. Florida Publishing Company, 132 So.2d 561, 566 (Fla. 1st DCA 1961); Maule Industries, Inc. v. Messana, 62 So.2d 737 (Fla. 1953).
[*] Mullin v. Genesee County Electric Light, Power and Gas Co., 202 N.Y. 275, 279, 95 N.E. 689, 690 (1911), was a common law claim by an injured lineman against his employer for failure "to furnish him a reasonably safe place in which to work," which the Florida Supreme Court in Robinson correlated with the duty to warn of dangers. The New York court held:

[T]he question is whether the general rule that it is the duty of the master to exercise reasonable care to provide a fairly safe working place for his servants, applies to a case like the one at bar. That rule does not apply "where the prosecution of the work itself makes the place and creates the danger." ... The reason for this exception to the general rule is that it would be manifestly absurd to hold a master to the duty of providing a safe place when the very work in which the servant is engaged makes it unsafe. If a man is engaged in tearing down a house he is constantly exposed to dangers of his own creation. .. .